67 N.J. Super. 145 (1961)
170 A.2d 57
ROSARIO PALIZZOTTO AND GUS WAGNER, INDIVIDUALLY AND IN THE RIGHT AND BEHALF OF ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS,
v.
LOCAL 641, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA AND HALL'S MOTOR TRANSIT COMPANY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 18, 1961.
*146 Mr. Morris Grundman, attorney for plaintiffs.
Mr. Jacob Friedland, attorney for defendant Local 641, etc.
*147 Messrs. Brenner & New, attorneys for defendant Hall's Motor Transit Company (Mr. Herbert New, appearing).
COLLESTER, J.S.C.
The plaintiffs bring this summary procedure by way of complaint and order to show cause pursuant to N.J.S. 2A:24-7 to vacate and set aside an arbitration award. The defendants have counterclaimed seeking the confirmation of such award. The pertinent facts hereinafter set forth are not in dispute.
The plaintiffs are employees of the defendant Hall's Motor Transit Company, a corporation (hereinafter referred to as Hall's), and are members of the defendant Local 641, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter referred to as the union), the collective bargaining agent representing Hall's employees.
The defendant union, together with other unions located in the New York-New Jersey metropolitan area, have repeatedly negotiated and entered into collective bargaining contracts with Hall's and other companies in the area. Contracts between the union and Hall's of two years' duration were entered into effective on September 1, 1958 and September 1, 1960. Such contracts were ratified by the members of the union at union meetings called for such purpose. The contracts require union membership of all truck drivers, helpers and other employees engaged in such trucking business as a condition of employment.
In May 1960 the defendant Hall's notified the union that it had entered into an agreement with Buch Express Company to merge the two companies and requested the union to advise as to the method of establishing seniority rights of the employees. Buch Express Company (hereinafter referred to as Buch) was another trucking concern, whose employees were likewise represented by the union, Local 641, which had a similar collective bargaining contract with said company.
*148 On August 8, 1960 the Interstate Commerce Commission granted authority to Hall's and Buch to merge effective August 22, 1960.
On August 19, 1960 the union received notice that Hall's and Buch were merged, and the president of Local 641 conferred with employees of both companies. The employees of Buch demanded that their seniority rights should be "dovetailed" with Hall's employees pursuant to the terms of article 5, section 5(d) of the collective bargaining contract, since there had been a merger between Hall's and Buch. The employees of Hall's demanded that their seniority rights were paramount to the seniority rights of the Buch employees and that such rights were governed by article 5, section 5(e) of the contract in that the transaction was not a "merger" but was an "acquisition" by Hall's of Buch's business.
The subsections referred to are as follows:

"5(d) Merger
When two or more companies merge their operations then the employees of the respective companies shall all be placed on one seniority roster in the order of the earliest date of hire of each of the employees with their respective employer.

5(e) Acquisition or Purchase
When one company acquires or purchases control of the business of another company then the employees of the company so acquired or purchased shall be placed at the bottom of the acquiring or purchasing company's seniority roster in the order of their payroll or company seniority with the former company."
Upon investigation of the circumstances, the president of Local 641, acting for the union concluded that the transaction was a merger and advised Hall's that seniority rights were based upon the contract clause relating to a merger, article 5, section 5(d), which provided for "dovetailing."
On September 2, 1960 counsel for the plaintiffs, stating that he represented a committee of teamsters employed by Hall's, notified both Hall's and the union that the employees' seniority rights were being violated as a result of the dovetailing *149 and demanded arbitration under the terms of the collective bargaining agreement.
On September 7, 1960 the union's attorney notified Hall's that in view of the dispute among the employees concerning seniority rights, the union was demanding that the issue be submitted to arbitration under the provisions of the collective bargaining contract.
Subsection (g) of article 5, section 5 (which refers to seniority rights in the event of a merger or an acquisition) provides:
"If a dispute arises concerning the interpretation or application of the foregoing provisions dealing with seniority, then the subject matter of such dispute may be taken up by the aggrieved party with the Joint Metropolitan Area Committee provided for herein."
Under the provisions of article 7, section 2, and article 8, section 1 of the union contract, the Joint Metropolitan Area Committee is comprised of an equal number of members designated by employers and local unions who are parties to the area contract, with no less than three on each side. It has "final authority" to determine questions of the meaning or import of any clause or provision of said contract.
In October 1960 the issue was presented to the Joint Metropolitan Area Committee. The plaintiffs were represented at the hearing. On November 4, 1960 the Committee rendered its decision finding that the transaction between Hall's and Buch was a merger and that seniority rights of the employees were governed by article 5, section 5(d), which provided for dovetailing of the employees of the merged companies in the establishment of seniority rights.
The first ground urged by plaintiffs to vacate the decision of the Joint Metropolitan Area Committee is that the decision was signed and acknowledged by only two of the six members of the arbitration committee selected to hear and determine the issue.
Following the filing of the complaint and the issuance of the order to show cause in this case, the six members of said committee on January 19, 1961, to overcome said *150 alleged defect signed, acknowledged and issued an amended decision in the matter which was identical with the decision rendered on November 4, 1960. The opinion was unanimous.
It is the general rule under the common law that there must be unanimity of conclusion among arbitrators unless otherwise indicated. Carhal Factors, Inc. v. Salkind, 5 N.J. 485 (1950). Here the contract between the parties provided for a decision by a majority vote. (See article 8, section 1(c), of the contract) Here all six members of the arbitration committee were unanimous in their finding as shown by the amended decision.
Our courts have repeatedly held that every intendment is indulged in favor of an award or decision made by arbitrators and that such award or decision is subject to impeachment only in a clear case. Held v. Comfort Bus Line, Inc., 136 N.J.L. 640, 642 (Sup. Ct. 1948); Creter v. Davis, 30 N.J. Super. 60 (Ch. 1954); affirmed 31 N.J. Super. 402 (App. Div. 1954); Carpenter v. Bloomer, 54 N.J. Super. 157, 168 (App. Div. 1959).
Technical omissions which in no way affect or reflect upon the decision itself or the manner in which it was arrived at should not be permitted to impeach an award of a decision of arbitrators. If it could be argued that the original decision was defective since it bore the signatures of only two of the arbitrators who therein by their oath acknowledged that they had been authorized by all of the arbitrators of the Committee to affix their signatures to the award "in their behalf as their voluntary act and deed"  then such defect has been cured by the execution and filing of the amended decision signed by all six members of the arbitration committee.
The second ground urged by plaintiffs to vacate the decision of the Joint Metropolitan Area Committee is that there was "evident partiality" on the part of the arbitrators. N.J.S. 2A:24-8 provides:
"The court shall vacate the award in any of the following cases:

* * * * * * * *
*151 b. Where there was either evident partiality or corruption in the arbitrators, or any thereof; * * *."
The arbitration tribunal designated as the Joint Metropolitan Area Committee under article 7, section 2, of the union contract was comprised of three employee representatives of other local unions of the International Brotherhood of Teamsters, etc., and three management representatives employed by other trucking firms than Hall's or Buch. All said local unions and trucking firms were parties to the same area collective bargaining agreement which binds Local 641, Hall's and Buch.
At the outset of the arbitration hearing the plaintiffs proposed that the union and Hall's waive the arbitration provisions of the contract and that the disputed issue be determined by an impartial umpire designated by the New Jersey Mediation Board, which proposal was rejected.
The plaintiffs contend that where, as here, rank-and-file employees oppose a decision as to their seniority rights previously made by their union and their employer, a fair and impartial determination of the issue cannot be had under the arbitration provisions contained in the union contract. They claim that since membership of the arbitration tribunal under the contract is comprised of members of brother local unions and of management representatives employed by trucking companies, all governed by the same area union contract, such members must necessarily support the position taken by Hall's and Local 641 as to the disputed seniority rights prior to the hearing. They allege that a "built-in" bias exists and that a fair and impartial tribunal could not be impanelled to decide the issue. Plaintiffs have offered no proof to show bias or partiality on the part of the arbitrators except to contend that the composition of the arbitration committee itself provided under the union contract constitutes "evident partiality," and thus under the statute, N.J.S. 2A:24-8, they are entitled to a vacation of the arbitrators' decision.
*152 While the seniority right of an employee has been held to be a property right, Dooley v. Lehigh Valley Railroad Co., 130 N.J. Eq. 75 (Ch. 1941); Walker v. Pennsylvania-Reading S.S. Lines, 142 N.J. Eq. 588 (Ch. 1948), it is also clear that such a right is not inherent to employment. It must arise either from a statute or from a contract between the employer and employee. No statute is involved in the instant case, and hence plaintiffs' seniority rights are based solely under the provisions of the collective bargaining contract. They rise no higher than the contractual relationship and exist only so long as the contract exists. Walker v. Pennsylvania-Reading S.S. Lines, supra, p. 600; Elder v. New York Central Railroad Co., 152 F.2d 361 (6 Cir. 1945).
The same collective bargaining agreement which grants seniority rights to the plaintiffs contains the grievance procedure designed to protect the rights thus conferred upon the employees.
In Jorgensen v. Pennsylvania R.R. Co., 25 N.J. 541, 561 (1958), the court stated:
"The separate provisions of a collective bargaining agreement cannot be construed and enforced without considering the purpose and context of the entire agreement. Rule 6 [right to a hearing before discharge] of this contract was not intended to create an independent actionable right standing alone. It must be read in conjunction with Rule 7 [grievance procedure], which was intended to implement and protect the right granted under Rule 6. Read together they contain a plan designed to effectuate the primary purpose of the parties to the contract; to afford job security to employees within the realities of the contractual situation, and to this end provide the remedy of reinstatement and back pay in the event the employee has been disciplined without cause. An employee cannot elect to accept the benefit conferred upon him without being bound to pursue the remedies provided for therein, in the absence of a showing that resort to those remedies would be futile. Since the employee's right to freedom from discharge without cause arises solely from the union contract, if he seeks redress for a breach thereof, should he not be bound to pursue the remedies provided for therein, which were designed to implement that right?
*153 We conclude that a proper interpretation of the collective bargaining agreement limits the employee to the rights and remedies specified therein."
The rationale of Jorgensen applies with equal vigor to the instant case. Here plaintiffs' seniority rights spring solely from the collective bargaining agreement negotiated and consummated with the employer by plaintiffs' collective bargaining representative, the defendant Union, Local 641. The same agreement contains the agreed method for the handling of grievances and for the determination of disputes involving the meaning or import of any clause or provision of said contract. The employees of Hall's ratified such agreement before it became effective. The arbitration procedure set forth therein thus became binding upon the employer and the employees covered thereby and a decision rendered by the arbitrators under the terms of the contract is final and binding.
In the United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960), Mr. Justice Douglas stated:
"Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties. The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement. * * *
The labor arbitrator performs functions which are not normal to the courts; the considerations which help him fashion judgments may indeed be foreign to the competence of courts. * * *
The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law  the practices of the industry and the shop  is equally a part of the collective bargaining agreement although not expressed in it. The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment. The parties expect that his judgment of a particular grievance will reflect not only what the contract says but, insofar as the collective bargaining agreement permits, such factors as the effect upon productivity of a particular result, its consequence to the morale of the shop, his *154 judgment whether tensions will be heightened or diminished. For the parties' objective in using the arbitration process is primarily to further their common goal of uninterrupted production under the agreement."
Here the plaintiffs, as members of the union, ratified the collective bargaining contract with full knowledge of the composition of the arbitration tribunal. Like most arbitrators or arbitration panels today, it is composed of members familiar with the "industrial common law"  the practices of the industry and the shop. To accept the theory advanced by the plaintiffs that a built-in partiality exists due to the composition of such an arbitration committee as is required by the terms of the contract would completely undermine the arbitration procedures in effect today through the country.
The plaintiffs have offered no evidence to show personal bias or partiality on the part of any of the six arbitrators who heard and decided the seniority issue. To set aside the decision rendered this court would of necessity have to find that any such arbitrator was lacking in integrity, honesty and impartiality. This court cannot accept such a premise as advanced by the plaintiffs. There must be evidence to show evident partiality on the part of an arbitrator in order to vacate the award. Our courts have held that every intendment is indulged in favor of the award and it is subject to impeachment only in a clear case. Held v. Comfort Bus Line, Inc., 136 N.J.L. 640 (Sup. Ct. 1948). There being no such proof of impartiality offered, plaintiffs' charge of evident partiality will be dismissed.
I find it unnecessary to pass upon the other defenses raised in this cause in view of the foregoing opinion.
As to the counterclaims filed by both the union and the employer seeking confirmation of the decision of the arbitrators, there having been no evidence presented to show that it was tainted by any of the infirmities of N.J.S. 2A:24-8, the decision of the arbitrators will be confirmed. Judgment will be entered accordingly.