541 S.E.2d 624

**William K. HALL, Petitioner Below, Appellant,**

v.

**THE BOARD OF EDUCATION OF THE COUNTY OF MINGO, Respondent Below, Appellee.**

**William K. Hall, Petitioner Below, Appellant,**

v.

**The Board of Education of the County of Mingo, Ron Matney, Joe Howard, and Joel T. Crum, Respondents Below, Appellees.**

Nos. 27870, 28396.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 1, 2000.

Decided Dec. 1, 2000.

John Everrett Roush, West Virginia School Service, Personnel Association, Charleston, West Virginia, Attorney for the Appellant.

F. Thomas Rubenstein, Harry M. Rubenstein, Kay, Casto & Chaney, Morgantown, West Virginia, Attorneys for Appellee Mingo County Board of Education.

DAVIS, Justice:

William K. Hall, appellant/petitioner below (hereinafter referred to as "Mr. Hall"), appeals a final order of the Circuit Court of Kanawha County that affirmed a decision by the West Virginia Education & State Employees Grievance Board (hereinafter referred to as "Grievance Board"). The dispositive issue for resolution is whether the lower tribunals erred by failing to award seniority earned by Mr. Hall during the time period of 1993–1994.[1]

## I.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Hall was employed as a substitute school bus driver for the Mingo County Board of Education (hereinafter referred to as "the BOE"), beginning on September 16, 1991. Eventually, the BOE posted four bus operator vacancies on September 19, 1994. Mr Hall applied for all four vacancies, but he was not hired for any of the four positions. Thereafter, Mr. Hall filed a grievance with the Education and State Employees Griev-

ance Board, (hereinafter referred to as "Grievance Board"), as a result of not being hired for any of the four positions.

While Mr. Hall's grievance was being litigated, another bus driver, Joel T. Crum, intervened and asserted that he was wrongfully denied one of the bus operator vacancies. An administrative law judge ruled that the BOE had to recalculate the seniority of both Mr. Hall and Mr. Crum to determine which of the two men had the most seniority. The BOE was ordered to award one of the bus operator vacancies to the individual with the most seniority.[2]

The BOE determined that Mr. Crum had more seniority than Mr. Hall.[3] The BOE made this determination after concluding that Mr. Hall had obtained employment as a substitute bus driver during the period of 1993–1994 as a result of inaccurate information regarding work he had performed in the 1970's. Thus, the BOE concluded that, after removing the seniority awarded for his work in the 1970's, Mr. Hall did not have enough seniority to obtain the substitute bus operator job awarded to him during the time period of 1993–1994. Consequently, the BOE

1. Mr. Hall filed a second petition for appeal with this Court identified as Case Number 28396. The petition was granted and consolidated with his first petition. After carefully reviewing the matters raised in the second appeal, we have determined that it is meritless and was improvidently granted for two reasons.

First, Mr. Hall was an intervenor in the grievance action underlying his second appeal. As an intervenor, Mr. Hall argued that the grievance was untimely filed. His argument was rejected because the case in which he intervened was held in abeyance for several years while Mr. Hall litigated matters involving the grievance underlying his earlier appeal to this Court.

Second, Mr. Hall contends that the issue of his seniority should have been litigated in the action in which he was an intervenor. The lower tribunals refused to litigate the issue, and we agree with that decision. The lower tribunals had no jurisdiction over Mr. Hall's seniority issue, as it was litigated in his first grievance and was pending review by this Court.

"Where it appears to the Court upon mature consideration that an appeal presents no substantial issues of fact or law which can be considered fairly raised and where the trial court arrived at a correct result, the appeal will be dismissed as improvidently awarded and the judgment of the circuit court will be summarily affirmed." Syllabus, *Napier v. Plymale*, 167

W.Va. 372, 280 S.E.2d 122 (1981). *Accord* Syl. pt. 1, *Lubeck Meat Packing, Inc. v. Motorists Mut. Ins. Co.*, 179 W.Va. 372, 369 S.E.2d 223 (1988). Therefore, the appeal in Case Number 28396 is dismissed as improvidently granted. *See, e.g., McDaniel v. Kleiss*, 198 W.Va. 282, 480 S.E.2d 170 (1996) (dismissing, in part, as improvidently granted); *Coleman v. Sopher*, 194 W.Va. 90, 459 S.E.2d 367 (1995) (dismissed as improvidently granted); *James M.B. v. Carolyn M.*, 193 W.Va. 289, 456 S.E.2d 16 (1995) (same); *State v. Walters*, 186 W.Va. 169, 411 S.E.2d 688 (1991) (same).

2. Apparently, one of the vacancies, which was designated the Gilbert area run (Ben Creek to Delbarton Grade), had been erroneously awarded to an individual. It was therefore available for reassignment to Mr. Hall or Mr. Crum.

3. Mr. Hall contends that the BOE awarded Mr. Crum retroactive relief that included wages, benefits and additional seniority, because the position itself was no longer available. Those assertions are incorrect. The administrative law judge addressed the issue in a footnote, in part, as follows: "Mr. Crum was not awarded back pay or any benefits, including regular seniority, although it is not clear why. [The BOE] at one point explained it was because he had not applied for the position...."

abolished all seniority that Mr. Hall had obtained during the 1993–1994 school year.

Mr. Hall filed a grievance challenging the BOE's decision. The decision of the BOE was affirmed at the administrative level.[4] Mr. Hall then appealed the decision to the circuit court, where the BOE's decision was also affirmed. It is from the circuit court's decision that Mr. Hall now appeals.

## II.

### STANDARD OF REVIEW

■■■ We have held that "[a] final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W. Va.Code § 18–29–1, et seq. (1985), and based upon findings of fact, should not be reversed unless clearly wrong." Syl. pt. 1, *Randolph County Bd. of Ed. v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989). In a recent decision by this Court we have indicated further that:

> Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed *de novo.*

Syl. pt. 1, *Cahill v. Mercer County Bd. of Educ.*, 208 W. Va. 177, 539 S.E.2d 437 (2000). *See also* Syl. pt 2, *Maikotter v. University of West Virginia Bd. of Trustees/West Virginia Univ.*, 206 W.Va. 691, 527 S.E.2d 802 (1999) ("Although we accord great deference to the findings of fact of the West Virginia Educational Employees Grievance Board, we review, *de novo,* questions of law.").

## III.

### DISCUSSION

Mr. Hall argues that it was error for the lower tribunals to revoke the seniority he earned during the time period of 1993–1994.[5] Mr. Hall argues that prior precedent of the Grievance Board permits an employee to retain seniority earned in a position that, for one reason or another, was found to have been wrongly awarded. *See, e.g., Spaulding v. Mingo County Bd. of Educ.*, W. Va. Educ. & State Empl. Griev. Bd., Docket No. 91–29–492 (August 31, 1992). The administrative law judge acknowledged the Grievance Board's precedent, but ruled that "[t]o the extent the holding in *Spaulding* ... requires grievant in this situation to be credited with regular seniority, it is overruled."

Additionally, Mr. Hall argues that the administrative law judge's decision to overrule *Spaulding* was an arbitrary decision. Mr. Hall accurately contends that *Spaulding* had been applied by the Grievance Board in *Hurley v. Mingo County Brd. of Educ.*, W.Va. Educ. & State Empl. Griev. Bd., Docket No. 95–29–211R (April 8, 1998), to award seniority to an employee who had been wrongfully awarded a position. Although, the circuit court was made aware of the contradicting positions taken by the Grievance Board, it responded by ruling that "the Court must recognize that the West Virginia Education and State Employees Grievance Board may reasonably interpret statutes and prior decisions that it is charged with administering."

This Court has never squarely addressed the issue of whether school service personnel[6] must be given earned seniority for time

---

**4.** Mr Hall was actually awarded *some* of the seniority initially removed by the BOE. The administrative law judge reasoned that, since the inaccurate calculation of Mr. Hall's work in the 1970's was not his fault, he should not be stripped of all the seniority he gained in 1993–1994. Therefore, the administrative law judge awarded to Mr. Hall seniority from the 1993–1994 time period that would give him one day less seniority than Mr. Crum.

**5.** Mr. Hall's brief misleads the Court insofar as he contends the administrative law judge failed to calculate *any* seniority earned for the 1993–1994 period.

**6.** Although Mr. Hall was a substitute school service bus driver and not a regular school service employee, our analysis makes no distinction between substitute and regular school service employees. Under the facts of this case, the out-

served under a contract for a position that was later determined to have been incorrectly awarded to an employee.[7] We do so now.

■ It is generally recognized by courts in other jurisdictions that seniority is not inherent to employment. Accordingly, we hold that seniority arises either from a statute or from a contract between an employer and an employee. *See N.L.R.B. v. International Association of Machinists, Aeronautical Indus. Dist. Lodge 727*, 279 F.2d 761 (9th Cir. 1960); *N.L.R.B. v. Wheland Company*, 271 F.2d 122 (6th Cir.1959); *Flowers v. Brotherhood of Locomotive Firemen and Enginemen*, 212 Ga. 142, 91 S.E.2d 41 (1956); *May v. Santa Fe Trail Transp. Co.*, 189 Kan. 419, 370 P.2d 390 (1962); *Hessler v. American Television & Radio Co.*, 258 Minn. 541, 104 N.W.2d 876 (1960); *Palizzotto v. Local 641, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 67 N.J.Super. 145, 170 A.2d 57 (1961). In this State, school service personnel seniority is established by statute. Therefore, we begin our analysis by reviewing the relevant statutes.

■ This Court has long held that "[w]hen a statute is clear and unambiguous and legislative intent is plain the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. pt. 1, *Cummins v. State Workmen's Comp. Comm'r*, 152 W.Va. 781, 166 S.E.2d 562 (1969). *Accord City of Kenova v. Bell Atlantic–West Virginia, Inc.*, 196 W.Va. 426, 432,

473 S.E.2d 141, 147 (1996). Conversely, "[a] statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992). *Accord* Syl. pt. 3, *State ex rel. McGraw v. Combs Servs.*, 206 W.Va. 512, 526 S.E.2d 34 (1999). Moreover, "[s]tatutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. pt. 3, *Smith v. State Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). *Accord* Syl. pt. 5, *State ex rel. Rist v. Underwood*, 206 W.Va. 258, 524 S.E.2d 179 (1999). It is also the "duty of this Court to avoid whenever possible a construction of a statute which leads to absurd, inconsistent, unjust or unreasonable results." *State v. Kerns*, 183 W.Va. 130, 135, 394 S.E.2d 532, 537 (1990). *Accord Expedited Transp. Sys., Inc. v. Vieweg*, 207 W.Va. 90, 98, 529 S.E.2d 110, 118 (2000). With these general canons in mind, we now address the statutes relevant to this case.

At the outset, we must acknowledge that we have discovered no school service personnel statute that directly addresses the issue of whether a school service employee must be awarded seniority for time served under a contract for a position later determined to have been incorrectly filled by such employee. Therefore, in an effort to determine the legislative intent and to decided a fair resolution of the question, we must look to other

come would be the same regardless of a person's status as a regular or substitute service employee.

**7.** This Court's decision in *Triggs v. Berkeley County Bd. of Educ.*, 188 W.Va. 435, 425 S.E.2d 111 (1992), is distinguishable from the question now presented. In *Triggs* we were asked to determine what happens to the seniority of a *professional employee* who voluntarily resigns and is subsequently reemployed by the same board of education. We held in *Triggs* that the Legislature "did not intend seniority rights to be retained by a teacher who voluntarily resigns or retires." *Triggs*, 188 W.Va. at 441, 425 S.E.2d at 117. Our holding in *Triggs* was qualified by the following language: "It is further noted that this opinion shall have no retroactive application and those school employees who were awarded seniority after a break in service prior to our deci-

sion in this case shall retain such seniority." *Triggs*, 188 W.Va. at 442, 425 S.E.2d at 118.

Following the decision of this Court in *Triggs*, the Legislature promulgated W.Va.Code § 18A–4–7b (1993) (Repl.Vol.1997), which now provides for the retention of seniority rights by a professional school employee who voluntarily terminates his or her employment. However, no such provision has been promulgated with regard to school service employees. *See Hazelwood v. Mercer County Bd. of Educ.*, 200 W.Va. 205, 488 S.E.2d 480 (1997) (per curiam) (affirming denial of seniority for school service employee for years of employment earned before she resigned). In the case *sub judice* we are not asked to determine whether school service personnel who resign, but are subsequently rehired by a county board of education, retain prior seniority.

relevant statutes regarding seniority for school service personnel.[8]

The Legislature has expressly identified when seniority begins to accumulate for school service personnel. In W. Va.Code § 18A–4–8g(a) (2000) (Supp.2000)[9] the following language appears:

> (a) Seniority accumulation for a regular school service employee begins on the date the employee enters upon regular employment duties pursuant to a contract as provided in section five [§ 18A–2–5], article two of this chapter and continues until the employee's employment as a regular employee is severed with the county board. Seniority shall not cease to accumulate when an employee is absent without pay as authorized by the county board or the absence is due to illness or other reasons over which the employee has no control as authorized by the county board. Seniority accumulation for a substitute employee shall begin upon the date the employee enters upon the duties of a substitute as provided in section fifteen [§ 18A–4–15] of this article, after executing with the board a contract of employment as provided in section five, article two of this chapter. The seniority of a substitute employee, once established, shall continue until the employee enters into the duties of a regular employment contract as provided in section five, article two of this chapter or employment as a substitute with the county board is severed. Seniority of a regular or substitute employee shall continue to accumulate except during the time when an employee is willfully absent from employment duties because of a concerted work stoppage or strike or is suspended without pay.

*See also* W. Va.Code § 18A–4–8b (1996) (Repl.Vol.1997) ("For purposes of determining seniority under this section an employee's seniority begins on the date that he or she enters into his assigned duties.... The seniority of any service personnel shall be determined on the basis of the length of time the employee has been employed by the county board within a particular job classification.").

Based upon the foregoing, we hold that, pursuant to W. Va.Code § 18A–4–8g(a) (2000) (Supp.2000), seniority for a regular school service employee continues until the employee's regular employment with the county board is severed. Seniority of a substitute school service employee shall continue until the employee enters into the duties of a regular employment contract or employment as a substitute with the county board is severed. Finally, under the aforementioned statute, seniority of a regular or substitute employee shall continue to accumulate except during the time when an employee is willfully absent from employment duties because of a concerted work stoppage or strike, or is suspended without pay.

While the Legislature has expressly stated in W. Va.Code § 18A–4–8g(a) those conditions upon which a school service employee may lose seniority, the statute provides no guidance for how a school service employee loses seniority earned in a position for which the employee was erroneously employed. In reviewing other statutes, we have found a clear preference by the Legislature that "earned" benefits, such as seniority, be retained by school service employees. The following relevant language appears in the employment terms and definition section of W. Va.Code § 18A–4–8(m) (2000) (Supp. 2000):

> No service employee, without his or her written consent, may be ... relegated to any condition of employment which would result in a reduction of his or her salary, rate of pay, compensation or benefits earned during the current fiscal year....[10]

---

**8.** After exhaustive research, we were unable to find any jurisdiction that had addressed the precise issue confronting this Court.

**9.** Although W. Va.Code § 18A–408g was modified in 2000, the quoted language is substantively identical to that which was in effect at the relevant time.

**10.** W. Va.Code § 18A–4–8(m) reads in full:

> (m) No service employee, without his or her written consent, may be reclassified by class title, nor may a service employee, without his or her written consent, be relegated to any condition of employment which would result in a reduction of his or her salary, rate of pay,

(Footnote added). The above statute is a general pronouncement that sets forth a standard for taking action against a school service employee that would adversely affect specific rights of an employee. That standard requires the written consent of the employee for such adverse action to occur. We believe that under the above statute, accumulated seniority by a school service employee would constitute a "benefit[ ] earned" that could not be adversely affected without the employee's written consent.[11]

W. Va.Code § 18A–4–8(m) is consistent with several other statutes. It clearly expresses a legislative intent that "earned" benefits, such as seniority, may not be arbitrarily removed once awarded to school service personnel. Similar retention language appears in W. Va.Code § 18A–4–8b as follows:

The seniority of any service personnel shall be determined on the basis of the length of time the employee has been employed by the county board within a particular job classification. For the purpose of establishing seniority for a preferred recall list as provided in this section, when an employee has been employed in one or more classifications, *the seniority accrued in each previous classification shall be retained by the employee.*

If a county board is required to reduce the number of employees within a particular job classification, the employee with the least amount of seniority within that classification or grades of classification shall be properly released and employed in a different grade of that classification if there is a job vacancy: Provided, that if there is no job vacancy for employment within the classification or grades of classification, he or she shall be employed in any other job classification which he or she previously held with the county board if there is a vacancy and *shall retain any seniority accrued in the job classification or grade of classification.*

(Emphasis added). We have also found seniority retention language in W. Va.Code § 18A–4–8c (1990) (Repl.Vol.1997). Which states:

[S]ervice personnel whose employment with the multi-county vocational center was immediately preceded by employment with one of the county boards participating in the operation of the center or whose employment contract was with one of the county boards participating in the operation of the center (1) *shall retain any seniority accrued during employment by said county board. . . .* [12]

(Emphasis added) (footnote added). Finally, retention of seniority rights are provided for

compensation or benefits earned during the current fiscal year or which would result in a reduction of his or her salary, rate of pay, compensation or benefits for which he or she would qualify by continuing in the same job position and classification held during that fiscal year and subsequent years.

**11.** W. Va.Code § 18A–4–8(m) is a general pronouncement. Therefore, it can be superseded by a specific statute concerning seniority, such as W. Va.Code § 18A–4–8g(a). "The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled." Syl. pt. 1, *UMWA by Trumka v. Kingdon,* 174 W.Va. 330, 325 S.E.2d 120 (1984). *Accord* Syl. pt. 6, *Carvey v. West Virginia State Bd. of Educ.,* 206 W.Va. 720, 527 S.E.2d 831 (1999).

**12.** This provision in W. Va.Code § 18A–4–8c reads in full as follows:

Professional and service personnel employed by a multi-county vocational center shall establish seniority on the basis of the length of time

the employee has been employed by the multi-county vocational center, except that any professional or service personnel whose employment with the multi-county vocational center was immediately preceded by employment with one of the county boards participating in the operation of the center or whose employment contract was with one of the county boards participating in the operation of the center (1) shall retain any seniority accrued during employment by said county board; (2) shall accrue seniority as a regular employee with said county board during employment with the center; (3) shall attain continuing contract status with both the county and the center if the sum of the years employed by the county and the center equals the statutory number required for continuing contract status; and (4) shall retain and continue to accrue county and center seniority in the event of reemployment by said participating county as a result of direct transfer from the center or recall from the preferred list.

in W. Va.Code § 18A–4–8g(e) (2000) (Supp. 2000) as follows:

> [U]pon termination of a leave of absence or a suspension, the employee shall return to the status previously held. If the employee returns to substitute status, the employee shall retain any regular employee seniority accrued.[13]

(Footnote added).

These statutes clearly illustrate the importance of seniority as it is viewed by the Legislature. We are equally aware of the importance of seniority in the careers of school service employees. The significance of seniority was carefully articulated in a dissenting opinion by Chief Judge Feinberg of the United States Court of Appeals for the Second Circuit as follows:

> Seniority is the most important, and often the only, equity workers have in their [jobs]. It is one of the chief protections a worker has from management's vagaries, and it preserves the self-esteem and financial security of workers who have devoted their lives to [their jobs].

*In re Royal Composing Room, Inc.*, 848 F.2d 345, 356 (2d Cir.1988) (Feinberg, C.J., dissenting). *See also* George Cooper & Richard B. Sobol, *Seniority and Testing Under Fair Employment Laws: A General Approach to Objective Criteria of Hiring and Promotion*, 82 Harv. L.Rev. 1598, 1601–02 (1969) ("The use of competitive status seniority to govern promotions, demotions, and layoffs is a fundamental aspect of industrial relations in this country. In nearly all businesses of significant size whose employees are organized, a seniority system plays some role in determining the allocation of the work."). It is the opinion of this Court that, because of its significance, "earned" seniority cannot be removed from an employee in an arbitrary manner.

■ We have little hesitation in concluding that the administrative law judge acted arbitrarily and capriciously by failing to apply the *Spaulding* decision to Mr. Hall's grievance and by failing to award to Mr. Hall all seniority credits earned for the time period of 1993–1994. We agree with Mr. Hall that the administrative law judge's conduct makes it appear that "there is one principle of law on this issue for [him] and another for every other service employee of [the BOE]." Our laws must be uniformly applied. Therefore, we hold that school service personnel must be awarded seniority earned for time served under a contract for a position later determined to have been incorrectly awarded to such employee.[14]

■ In the instant case, the record indicates that Mr. Hall was not at fault in the miscalculation which lead to his obtaining the substitute bus driving contract for the period of 1993–1994.[15] Consequently, it was error for the lower tribunals to deny Mr. Hall the full seniority credits he earned during the period of 1993–1994.[16]

---

**13.** W. Va.Code § 18A–4–8g(e) reads in its entirety as follows:

> (e) A substitute school service employee shall acquire regular employment status and seniority if the employee receives a position pursuant to subsections (2) and (5), section fifteen of this article: Provided, That a substitute employee who accumulates regular employee seniority while holding a position acquired pursuant to said subsections shall simultaneously accumulate substitute seniority; Provided, further, That upon termination of a leave of absence or a suspension, the employee shall return to the status previously held. If the employee returns to substitute status, the employee shall retain any regular employee seniority accrued, however, this seniority may not be used in the bidding process for regular positions unless the employee again attains regular employee status or has attained preferred recall status. County boards shall not be prohibited from providing any benefits of regular employment for substitute employees, but the benefits shall not include regular employee status and seniority.

**14.** The obvious caveat to our holding would be an employee who knowingly took some "unlawful" or deceitful action to obtain seniority.

**15.** It was indicated in the brief of the BOE that Mr. Hall was "somehow" at fault for the initial miscalculation that qualified him for the substitute work in 1993–1994. However, the ALJ specifically found that the miscalculation was "due to no fault of [Mr. Hall]."

**16.** Mr. Hall raises several other issues as alternatives for granting him relief. Those issues need not be addressed in this opinion.

## IV.

### CONCLUSION

Insofar as Case Number 28396 was improvidently granted, the circuit court's order in that case is affirmed. As to Case Number 27870, the decision of the circuit court is reversed. The case is remanded for disposition consistent with this opinion.

Affirmed as to Case Number 28396; Reversed and Remanded as to Case Number 27870.