IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2025 Term

_____

FILED

May 27, 2025

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 23-726

_____

BRITTANY FOSTER,
Claimant Below, Petitioner

v.

PRIMECARE MEDICAL OF WEST VIRGINIA, INC.,
Employer Below, Respondent.

_____

Appeal from the Intermediate Court of Appeals of West Virginia

ICA No. 23-ICA-266

JCN No. 2021009577

REVERSED AND REMANDED WITH DIRECTIONS

_____

Submitted: March 18, 2025
Filed: May 27, 2025

Lori J. Withrow, Esq.
Reginald D. Henry, Esq.
Reginal D. Henry, Attorney at Law, PLLC
Mabscott, West Virginia
Counsel for Petitioner

Mark R. Simonton, Esq.
Alex S. Blevins, Esq.
Offutt Simmons Simonton, PLLC
Huntington, West Virginia
Counsel for Respondent

CHIEF JUSTICE WOOTON delivered the Opinion of the Court.

JUSTICE ARMSTEAD dissents and reserves the right to file a separate opinion.

JUSTICE BUNN dissents and reserves the right to file a separate opinion.

**SYLLABUS BY THE COURT**

1.      "On appeal of a decision of the West Virginia Workers' Compensation Board of Review from the Intermediate Court of Appeals of West Virginia to the Supreme Court of Appeals of West Virginia, the Supreme Court of Appeals is bound by the statutory standards contained in West Virginia Code § 23-5-12a(b) (eff. Jan. 13, 2022). Questions of law are reviewed *de novo*, while findings of fact made by the Board of Review are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 3, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

2.      In a workers' compensation claim in which it is alleged that the claimant contracted COVID-19 as a result of workplace exposure, statistical evidence as to the incidence of workplace-related risk vis-a-vis outside risk is relevant, but not dispositive, in determining whether the claimant's exposure "[came] from a hazard to which workmen would have been equally exposed outside of the employment[.]" W. Va. Code § 23-4-1(f)(4) (2023). In making a determination of compensability, any such evidence may be considered, together with the parties' evidence tending to prove or disprove that the claimant in fact contracted COVID-19 from exposure in the workplace.

i

3.	"'Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments.' Syl. Pt. 3, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975)." Syl. Pt. 7, *Vanderpool v. Hunt*, 241 W. Va. 254, 823 S.E.2d 526 (2019).

4.	"It is a settled principle of statutory construction that courts presume the Legislature drafts and passes statutes with full knowledge of existing law." Syl. Pt. 1, *Duff v. Kanawha Co. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

5.	A workers' compensation claim for work-related injury, disease, or death caused by or arising from COVID-19 may be held compensable, notwithstanding that workers generally were exposed to the disease outside of their employment, when a preponderance of the evidence establishes that the claimant contracted the disease in the course of and resulting from his or her covered employment and further establishes the other elements of the test set forth in West Virginia Code section 23-4-1(f) (2023).

WOOTON, Chief Justice:

Although this nation is thankfully past the scourge of the COVID-19 pandemic, which was at its height from early 2020 through mid-2021, various legal issues arising therefrom remain for resolution not only by legislative bodies but also by the courts. In the instant case, Petitioner Brittany Foster's ("Ms. Foster") workers' compensation claim, which was based on her contention that she contracted an occupational disease, COVID-19, was found by the Workers' Compensation Board of Review ("the Board") to be compensable. However, the Intermediate Court of Appeals ("ICA") reversed the Board's decision, holding that a single medical study submitted by Respondent PrimeCare Medical of West Virginia, Inc. ("PrimeCare") was dispositive of the case because Ms. Foster failed to disprove the study's conclusion that in three separate metropolitan areas where statistical evidence was gathered, health care workers' exposure to COID-19 in the workplace did not result in a higher occurrence of illness than that experienced by individuals who did not work in the health care field. The question now before this Court is how to analyze claims of injury resulting from workplace exposure to this airborne pathogen. Ms. Foster argues that the ICA's decision was clearly wrong in finding that in the absence of evidence that health care workers are at greater *risk* of contracting COVID-19 in the workplace, evidence that a worker actually *did* contract the disease in the workplace is insufficient to satisfy a claimant's burden of proof under West Virginia Code section 23-4-1(f) (2023). Conversely, PrimeCare argues that the ICA's analysis was proper, and further argues that as a matter of law COVID-19 cannot be a compensable occupational

1

disease because contracting COVID-19 is "a hazard to which workmen would have been equally exposed outside of the employment." *See* W. Va. Code § 23-4-1(f)(4) (discussed *infra* in detail).

We disagree with this sweeping pronouncement. We conclude that an analysis of whether an occupational disease resulted from a claimant's workplace exposure to COVID-19 is no different than the analysis employed in every case to determine causation, and hence compensability: whether the claimant's evidence, including medical testimony and records, preponderates over that submitted by the employer. In the instant case, we find that the ICA erred in reversing the decision of the Board of Review which was favorable to Ms. Foster.

## I.     FACTUAL AND PROCEDURAL HISTORY

Ms. Foster, a licensed practical nurse working at the Southern Regional Jail, alleged that she contracted COVID-19, and had myriad complications thereafter, as a result of work-related exposure to both inmates and correctional/administrative personnel who tested positive for the disease. It is undisputed that Ms. Foster did contract COVID-19 and was hospitalized for fifteen days. Additionally, it is undisputed that during the relevant time frame, Ms. Foster had come into contact with twenty individuals at work, both inmates and colleagues, who tested positive for the disease. Nonetheless, PrimeCare disputes that any,

some, or all of the twenty work-related exposures caused Ms. Foster to contract COVID-19, arguing that she *may* have also been exposed during the course of two non-work-related outings during the relevant time frame: a closed-window car trip to a drive-through zoo with her mother, father, and two nieces in the vehicle, or a trip to the emergency room. In this regard, however, Ms. Foster presented undisputed evidence that all of the other individuals in the car during the closed-window trip to the drive-through zoo later tested negative for COVID-19, and that she was actually tested during her emergency room visit, with a negative result. Finally, it is undisputed that Ms. Foster suffers from heart- and lung-related conditions[1] which post-dated her hospitalization, although PrimeCare disputed whether these complications result from "Long COVID," and are thus conditions attributable to the compensable injury, or whether they are attributable to preexisting conditions, primarily morbid obesity. *See infra*.

This case has a lengthy procedural history. On March 1, 2022, Ms. Foster's claim for workers' compensation benefits was denied by the Claim Administrator. She appealed this denial to the Board, after which she was examined by Dr. Bruce Guberman, who determined – and so testified – that Ms. Foster's contraction of COVID-19 was an "occupational disease." Dr. Guberman's evaluation was based upon Ms. Foster's medical

---

[1] Medical records show that prior to contracting COVID-19, Ms. Foster had been treated for seasonal bronchitis. The Board found as a fact that PrimeCare's expert, Dr. Parker, was flatly wrong in asserting that Ms. Foster's medical records also show the existence of pre-existing asthma. Prior to contracting COVID-19, Ms. Foster had never been diagnosed or treated for asthma.

history, as reported by her, and upon her medical records. Although Dr. Guberman acknowledged that there are no specific tests which can determine exactly where and how an individual contracted COVID-19, he never wavered in his opinion that, to a reasonable degree of medical certainty, Ms. Foster contracted the disease as a result of her numerous exposures to inmates and jail personnel who tested positive. Thereafter, Dr. Thomas Parker performed a medical review and issued a report stating his opinion that Ms. Foster's COVID-19 was not an occupational disease, and further that a September 1, 2020, total lung capacity pulmonary function test showed that she had recovered quickly from COVID-19 pneumonia. Dr. Parker attributed all of Ms. Foster's continuing heart- and lung-related problems to preexisting conditions, primarily asthma[2] and morbid obesity. Of particular significance here, PrimeCare also introduced a March, 2021, medical study, *Risk Factors Associated with SARS-CoV-2 Seropositivity Among US Health Care Professionals* ("the Risk Factors Study"), which concluded that "the factors presumed to be most associated with COVID-19 infection risk among health care personnel, including workplace role, environment, and caring for COVID-19 patients, were NOT associated with increased health care personnel risk of COVID-19 infection." *See PrimeCare Med. of WV, Inc. v. Foster [Primecare II]*, No. 23-ICA-266, 2023 WL 7203395, at \*3 (W. Va. Ct. App. Nov. 1, 2023) (memorandum decision).

---

[2] *See supra* note 1.

The Board reversed the claim administrator's denial of Ms. Foster's claim, finding that she had established her entitlement to workers' compensation benefits pursuant to the six-factor test found in West Virginia Code section 23-4-1(f), which provides in relevant part that

> [f]or the purposes of this chapter, occupational disease means a disease incurred in the course of and resulting from employment. No ordinary disease of life to which the general public is exposed outside of the employment is compensable except when it follows as an incident of occupational disease as defined in this chapter. Except in the case of occupational pneumoconiosis, a disease is considered to have been incurred in the course of, or to have resulted from, the employment only if it is apparent to the rational mind, upon consideration of all the circumstances: (1) That there is a direct causal connection between the conditions under which work is performed and the occupational disease; (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment; (3) that it can be fairly traced to the employment as the proximate cause; (4) that it does not come from a hazard to which workmen would have been equally exposed outside of the employment; (5) that it is incidental to the character of the business and not independent of the relation of employer and employee; and (6) that it appears to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction.

*Id*. PrimeCare appealed to the ICA, which vacated the Board's order, finding that it was "insufficient in that it does not discuss each of the six factors" outlined in the statute and that "any decisions by the [Board] addressing [the statute] must discuss in detail each of the six factors and address whether the claimant has satisfied his or her burden to prove the presence of each factor." *See PrimeCare Med. of WV, Inc. v. Foster [PrimeCare I]*, 247 W.

5

Va. 590, 594, 595, 885 S.E.2d 171, 175, 176 (Ct. App. 2023). Portending what was to come, *see infra*, the ICA specifically referred to the Risk Factors Study, noting that "[a]s the only medical study in the record, this evidence cuts against a finding of compensability under factor four [of the statutory test]." The ICA directed the Board to perform "a thorough analysis of the six factors in West Virginia Code § 23-4-1(f) so that compensability of Ms. Foster's COVID-19 claim can be determined." 247 W. Va. at 595, 885 S.E.2d at 176.

On remand the Board did just that, issuing a comprehensive twenty-one-page opinion in which it once again found that Ms. Foster's evidence satisfied every prong of the statutory test for a claim involving an "ordinary disease of life to which the general public is exposed outside of the employment[.]" W. Va. Code § 23-4-1(f). Of particular relevance to this appeal, the Board discussed the Risk Factors Study at length, finding that because the study was limited to subjects in metropolitan areas within three discrete zip codes, it had little relevance to a claimant who lived and worked in a rural West Virginia area – an area which was in a different zip code and one with wholly different demographics. The Board also concluded that the study, even if accepted as Holy Writ, did not foreclose a finding that a claimant's workplace exposure was the cause of his or her contraction of the COVID-19 virus; it suggested only that "the risk of infection from community exposures may exceed the risk from patient exposures."

6

Once again, the ICA reversed, this time on the ground that the Risk Factors Study was the only evidence of record concerning the fourth factor in West Virginia Code section 23-4-1(f): that an "ordinary disease of life to which the general public is exposed outside of the employment . . . does not come from a hazard to which workmen would have been equally exposed outside of the employment[.]" The ICA found that

> The [Board] ignored the basic finding of the study, that COVID-19 infection risk among health care personnel was not associated with increased health care personnel risk of COVID-19 infection. With no evidence to refute the findings of the study, we now conclude that the evidence introduced by Ms. Foster fails to satisfy factor four of West Virginia Code § 23-4-1(f).

*PrimeCare II*, 2023 WL 7203395, at *4. This appeal followed.

## II. STANDARD OF REVIEW

This Court has held that

> [o]n appeal of a decision of the West Virginia Workers' Compensation Board of Review from the Intermediate Court of Appeals of West Virginia to the Supreme Court of Appeals of West Virginia, the Supreme Court of Appeals is bound by the statutory standards contained in West Virginia Code § 23-5-12a(b) (eff. Jan. 13, 2022). Questions of law are reviewed *de novo*, while findings of fact made by the Board of Review are accorded deference unless the reviewing court believes the findings to be clearly wrong.

7

Syl. Pt. 3, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024). Those statutory standards provide, in relevant part, that a decision of the Workers Compensation Board of Review may be reversed, vacated, or modified

> if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
>
> (3) Made upon unlawful procedures;
>
> (4) Affected by other error of law;
>
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary or capricious or characterized by abuse of discretion of clearly unwarranted exercise of discretion.

W. Va. Code § 23-12-5a(b) (2023); *accord Duff*, 250 W. Va. at __, 905 S.E.2d at 530, Syl. Pt. 2, in part.

With these standards to guide our analysis, we turn to the issues in this case.

## III.    DISCUSSION

We begin with the first of two issues raised in this case: whether West Virginia Code section 23-4-1(f)(4), which involves evidence as to whether an occupational disease

comes from a hazard to which workmen would have been equally exposed outside the employment, required Ms. Foster to prove that health care workers are at a higher risk of contracting COVID-19 from exposure in the workplace than from exposure outside it. In this regard, the ICA found that "[r]egarding factor four, the evidence in the record below consisted of only one medical study [the Risk Factors Study]," the "basic finding of [which was] that COVID-19 infection risk among health care personnel was not associated with increased health care personnel risk of COVID-19 infection." *PrimeCare II*, 2023 WL 7203395, at *3-4. The ICA found that the Risk Factors Study was dispositive of Ms. Foster's case because "'[m]ere speculation that a medical professional is at a greater risk of exposure than those outside of such employment is insufficient to satisfy factor four. Evidence must be presented." *Id*. In essence, the ICA held that West Virginia Code section 23-4-1(f)(4) required Ms. Foster to prove that health care workers are at a higher *risk* of contracting COVID-19 from workplace exposure, and accordingly evidence supporting her claim that she *in fact* contracted the disease from workplace exposure was irrelevant; thus, she failed to meet the requirements of the fourth prong of the statutory test, and that was the end of the inquiry. *See id*.

We disagree. First, it defies logic to hold that because Ms. Foster was not exposed to a statistically higher risk of workplace exposure as a result of her profession, no amount of proof could satisfy her statutory burden to prove that in fact she contracted COVID-19 from known exposures at work. Nothing in the text of West Virginia Code

9

section 23-4-1(f) supports this risk-determinative interpretation; rather, the statute by its express terms sets out a framework for determining whether "a disease is considered to have been incurred in the course of, or to have resulted from, the employment[,]" a determination which is to be made "upon consideration of *all the circumstances*[.]" *Id*. § 23-4-1(f) (emphasis added). Indeed, inasmuch as this Court has held that evidence of known risk linked to a particular workplace hazard "raises a prima facie case of causation . . . upon a showing that the claimant was exposed to a hazard and is suffering from the disease to which it is connected[,]" Syl. Pt. 5, in part, *Powell v. State Workmen's Comp. Comm'r*, 166 W. Va. 327, 273 S.E.2d 832 (1980), it is a logical inference that in the absence of known risk a claimant may still prove his or her case but without the benefit of a rebuttable presumption of causation.[3]

Further, the ICA's reliance on risk as being wholly determinative would lead to an unreasonable and illogical result, one which would extend beyond the particular facts and circumstances of this case: that even where a health care worker can prove by a preponderance of the evidence that as a result of workplace exposure he or she contracted an "ordinary disease of life to which the general public is exposed outside of the employment[,]" W. Va. Code § 23-4-1(f), the claim would nonetheless fail as a matter of law in the absence of proof that the risk of exposure for health care workers in the

_____

[3] *See generally Skaggs v. Elk Run Coal Co., Inc.,* 198 W.Va. 51, 71-72, 479 S.E.2d 561, 581-82 (1996) (defining a prima facie case as, "in essence," a rebuttable presumption).

10

workplace – *all* health care workers in *all* health care facilities in *all* areas – is greater than the risk of exposure outside the workplace. Without question, this evidentiary burden would be impossible for any health worker to meet, thus sounding a death knell to relief for any health care worker's claim brought pursuant to West Virginia Code section 23-4-1(f). Such a result cannot be reconciled with either the language of West Virginia Code section 23-4-1(f) or its purpose, which was to provide a roadmap for relief in cases involving diseases of ordinary life.

Finally, in determining that the conclusions set forth in the Risk Factors Study were definitive, the ICA failed to consider the Board's exhaustive analysis of the myriad weaknesses of the study. Although the Board found Dr. Guberman's testimony to be credible, the ICA appears to have ignored or discounted all of it, including primarily that the study had little or no relevance to the facts of this case. Dr. Guberman first noted that the study came out quite early in the pandemic, at a time when the medical community was still struggling to figure out what was happening, and why. The study was performed in metropolitan areas where population data, exposure rates, information as to outcomes, and the like would be very different from those in Hinton or Beaver, West Virginia. Dr. Guberman cautioned that all of the early literature about COVID-19, even when peer reviewed, should be understood as more speculative than definitive, and that most if not all of such studies end with a statement that "more studies are needed." Finally, Dr. Guberman reiterated that whatever Ms. Foster's risk might have been, his review of the medical

records and the known facts led him to conclude that Ms. Foster in fact contracted COVID-19 at the workplace and that her post-hospitalization conditions are the result of Long COVID.[4]

In summary, we find that the ICA's construction of the fourth prong of the test established in West Virginia Code section 23-4-1(f)(4) is clearly erroneous, insofar as it would allow a finding of causation only in cases where the claimant is engaged in a profession having a statistically higher risk of COVID-19 infection in the workplace than outside of the workplace. To the contrary, we hold that in a workers' compensation claim in which it is alleged that the claimant contracted COVID-19 as a result of workplace exposure, statistical evidence as to the incidence of workplace-related risk vis-a-vis outside risk is relevant, but not dispositive, in determining whether the claimant's exposure "[came] from a hazard to which workmen would have been equally exposed outside of the employment[.]" W. Va. Code § 23-4-1(f) (2023). In making a determination of compensability any such evidence may be considered, together with the parties' evidence

---

[4] The Board relied on Dr. Guberman's opinion not only as to the causation of Ms. Foster's COVID-19 but also as to the fact that her current medical heart- and lung-related conditions are the result of Long COVID. The Board specifically rejected Dr. Parker's opinion that all of the current conditions are attributable to morbid obesity and other preexisting conditions. *See supra* note 1. Nothing in the record of this case would allow a reviewing court to re-weigh this evidence or find fault with the Board's credibility determinations.

12

tending to prove or disprove that the claimant in fact contracted COVID-19 from exposure in the workplace.

We turn now to PrimeCare's contention that the ICA's holding in *PrimeCare II,* which was entirely focused on risk, actually did not go far enough: PrimeCare argues that COVID-19 can never be held to be a compensable occupational disease because "the disease was everywhere," thus making a claimant's burden of proof under West Virginia Code section 23-4-1(f)(4) "insurmountable" under any and all circumstances. In essence, PrimeCare contends that the language of (f)(4) of the statute is a "poison pill" with respect to any workers' compensation claim based on exposure to COVID-19, an infectious disease to which the general public – including workers in every trade and profession – was exposed both inside and outside the workplace.

We acknowledge that the language of West Virginia Code section 23-4-1(f)(4), if read in isolation, could support PrimeCare's argument that COVID-19 can never be an occupational disease because the fourth prong of the test is entirely objective: whether COVID-19 is a hazard "to which *workmen* would have been equally exposed outside of the employment[.]" *Id*. (emphasis added). However, statutory language cannot always be read in isolation where, as here, it is apparent that such language is antithetical to clearly discernable legislative intent. *See* Syl. Pt. 14, *Wal-Mart Stores E., L.P. v. Ankrom*, 244 W. Va. 437, 854 S.E.2d 257 (2020) ("'In ascertaining legislative intent, effect must be

13

given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation.' Syllabus Point 2, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975)."); *see also Hall v. Bd. of Educ. of Cnty. of Mingo*, 208 W. Va. 534, 539, 541 S.E.2d 624, 629 (2000) ("It is also the 'duty of this Court to avoid whenever possible a construction of a statute which leads to absurd, inconsistent, unjust or unreasonable results.'") (citing *State v. Kerns,* 183 W. Va. 130, 135, 394 S.E.2d 532, 537 (1990)). In the case at bar, the express purpose of the statute is to provide a guideline for assessing workers' compensation claims involving "ordinary disease[s] of life to which the *general public* is exposed outside of the employment" which is nonetheless contracted in the workplace. W. Va. Code § 23-4-1(f). This cannot be reconciled with the language of subsection (f)(4), which as written would appear to disallow claims for an ordinary disease of life to which *workmen* would have been exposed outside the employment, unless "the general public" in West Virginia somehow does not include its "workmen" – a nonsensical proposition, to say the least.

Additionally, it is an accepted canon of statutory construction that "'[s]tatutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments.' Syl. Pt. 3, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975)." Syl. Pt. 7, *Vanderpool v. Hunt*, 241 W. Va. 254, 823 S.E.2d 526 (2019). In this regard, we note that in West Virginia Code section 55-19-6 (2025 Supp.), the Legislature has specifically

14

acknowledged that workers' compensation benefits may be awarded for "work-related injury, disease, or death caused by or arising from COVID-19[.]" *See* W. Va. Code § 55-19-6, which provides, in relevant part, that

> when a claim for workers' compensation benefits is awarded to an employee . . . for a work-related injury, disease, or death caused by or arising from COVID-19 in the course of and resulting from covered employment, such claim for workers' compensation benefits shall be the sole and exclusive remedy for such injury, disease, or death and the immunity from suit provided under § 23-2-6 and § 23-2-6a of this code shall be and remain in full force and effect.

This Court must presume that when the Legislature enacted the statute in 2021, "the legislators who drafted and passed it were familiar with all existing law applicable to the subject-matter, whether constitutional, statutory, or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof." Syl. Pt. 4, in part, *Davis Mem'l Hosp. v. W. Va. State Tax Comm'r*, 222 W. Va. 677, 678-79, 671 S.E.2d 682, 683-84 (2008); *accord Duff*, 250 W. Va. at __, 905 S.E.2d at 530, Syl. Pt. 1 ("It is a settled principle of statutory construction that courts presume the Legislature drafts and passes statutes with full knowledge of existing law."); *Jackson v. Harvey*, 250 W. Va. 721, __, 908 S.E.2d 458, 467 (2024) (to same effect). Accordingly, we reject PrimeCare's claim that West Virginia Code section 23-4-1(f)(4) was intended to exclude COVID-19 claims under any and all circumstances; if that were the case, West Virginia Code section 55-19-6 would be a nullity. *See* Syl. Pt. 4, *State ex rel. Hardesty v. Aracoma–Chief Logan No. 4523, Veterans of Foreign Wars,* 147 W.Va. 645, 129 S.E.2d

921 (1963) ("It is always presumed that the legislature will not enact a meaningless or useless statute.").

Finally, this Court recently reviewed a workers' compensation decision issued by the ICA in a case involving COVID-19, with no suggestion from either the ICA or this Court that COVID-19 can never be deemed a compensable occupational disease. *See Thompson v. Genesis Healthcare Grp.*, No. 23-ICA-437, 2024 WL 1270271 (W. Va. Ct. App. March 25, 2024) (memorandum decision), *aff'd*, No. 24-281, 2025 WL 562549 (W. Va. Feb. 20, 2025) (memorandum decision) (claimant's contraction of COVID-19 held compensable; the only question on appeal was whether claimant's post-COVID-19 medical conditions were related to the compensable diagnosis); *cf. Scottish Rite Bodies of Charleston v. Weese*, No. 22-0427, 2024 WL 2922606, at *3 (W. Va. June 10, 2024) (memorandum decision) (upholding claim for Legionnaire's Disease because "[u]nder West Virginia Code § 23-4-1(f), an ordinary disease of life to which the general public is exposed can be held compensable when a claimant shows that the disease was incurred in the course of and resulting from his employment."). Additionally, as noted in *PrimeCare I*, Insurance Bulletin No. 21-01, issued by the West Virginia Office of the Insurance Commissioner ("WVOIC"), directed that "workers' compensation claims for COVID-19 should not be summarily refused, denied, or rejected outright due to the nature of the injury alone[.]"). 247 W. Va. at 593 n.7, 885 S.E.2d at 174 n.7. Although we need not decide what, if any, judicial deference may be accorded this administrative interpretation of the law, the

16

WVOIC's interpretation is clearly consistent with the aforesaid legislative acknowledgement that workers' compensation awards may be made for "work-related injury, disease, or death caused by or arising from COVID-19 in the course of and resulting from covered employment." W. Va. Code § 55-19-6.

In light of the foregoing, we hold that a workers' compensation claim for work-related injury, disease, or death caused by or arising from COVID-19 may be held compensable, notwithstanding that workers generally were exposed to the disease outside of their employment, when a preponderance of the evidence establishes that the claimant contracted the disease in the course of and resulting from his or her covered employment and further establishes the other elements of the test set forth in West Virginia Code section 23-4-1(f) (2023).

## IV. CONCLUSION

In the instant case, the Board issued a detailed order on remand which considered and weighed all of the evidence, including the Risk Factors Study, and concluded that a preponderance of the evidence established Ms. Foster contracted COVID-19 as a result of her multiple known exposures in the workplace, not as a result of two possible exposures outside of the workplace. Our review of the record convinces us that

17

none of the Board's findings of fact and conclusions of law on this or any other points[5] are subject to reversal, vacation, or modification under the standards enunciated by this Court in *Duff*, 250 W. Va. at __, 905 S.E.2d at 530. Accordingly, we reverse the judgment of the ICA and remand this case with directions to reinstate the Board's decision of May 19, 2023.

Reversed and Remanded with Directions.

---

[5] *See supra* note 4.