CARL W. SMITH, SR.

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER

*and*

EASTERN ASSOCIATED COAL CORPORATION

(No. 13576)

Decided November 4, 1975.

*Michael R. Crane and Norman T. Farley, Legal Division,* for appellant State Workmen's Compensation Commissioner.

*Shaffer, Theibert & Ikner, R. L. Theibert* for appellee Eastern Associated.

HADEN, CHIEF JUSTICE:

This is an appeal by the Workmen's Compensation Commissioner from a final order of the Workmen's Com-

pensation Appeal Board which held, in reversing the Commissioner, that the Commissioner could not require Eastern Associated Coal Corporation, a self-insured employer, to pay medical bills for the benefit of its injured employee, Carl W. Smith, Sr., in excess of a $3,000.00 statutory limit in effect as of the date of the injury.[1]

On December 1, 1967, Mr. Smith suffered a severe fractured leg in the course of and resulting from his employment. Subsequent complications required that his leg be amputated five and one-half inches below the knee. Thereafter, in 1970, the injured claimant was granted a total permanent disability award. The total cost of medical care incurred by reason of the work-related injury amounted to $11,724.22. This amount was billed to the employer by the Commissioner and was promptly paid although the employer filed a timely protest to the issuance of additional pay orders amounting to $5,748.65. In its protest, the employer contended that *W. Va. Code* 1931, 23-4-3, as amended, exempts all employers from liability for medical expenses beyond $3,000.00. The employer also made a demand on the Commissioner for reimbursement of $8,724.22, the total amount it had paid out in excess of the statutory limit.

After conducting hearings on the protest, the Commissioner affirmed his ruling directing issuances of the pay orders and denied the employer's claim for reimbursement. Upon appeal to the Board, that body reversed the decision of the Commissioner and held that the employer could not be required to honor pay orders for extraordinary medical expenses incident to Smith's claim in excess of $3,000.00. The Board, however, held that the employer was not entitled to reimbursement from the Workmen's Compensation Fund for excess payments already made. Eastern did not appeal that ruling to this Court.

---

[1]Effective June 7, 1974, the statutory limit on medical bills chargeable to certain employers was raised to $7,500.00. See *Acts of the Legislature,* Regular Session 1974, ch. 145.

There are no factual disputes in this case. The sole dispositive issue in this appeal is whether the Commissioner has authority to direct a self-insurer to pay medical expenses in excess of the $3,000.00 limit prescribed in *W. Va. Code* 1931, 23-4-3, as amended. For reasons which shall appear, this Court is of the opinion that the Workmen's Compensation Commissioner does possess such authority.

The injury involved in this claim occurred on December 1, 1967. The statutes governing the rights and duties of the employer and claimant and the powers and responsibilities of the Commissioner are those that were in effect on the date of the injury. *Pertee v. State Workmen's Compensation Commissioner*, W. Va., 197 S.E.2d 318, 320 (1973); *Ball v. Workmen's Compensation Commissioner*, W. Va., 194 S.E.2d 229, 230 (1973).

In 1967, *W. Va. Code* 1931, 23-2-1 and 23-2-5, as amended, required all employers, including Eastern Associated Coal Corporation, to pay quarterly premiums, based upon the percentage of the payroll of each employer, for the purpose of creating a Workmen's Compensation Fund. *W. Va. Code* 1931, 23-2-9, as amended, however, provided an exception to this general requirement. It stated *inter alia:*

> "[E]mployers subject to this chapter who are of sufficient financial responsibility to insure the payment of compensation to injured employees and the dependents of fatally injured employees, *whether in the form of pecuniary compensation or medical attention, funeral expenses or otherwise as herein provided, of the value at least equal to the compensation provided in this chapter,* or employers of such financial responsibility who maintain their own benefit funds, or system of compensation, to which their employees are not required or permitted to contribute, ... may, upon a finding of such facts by the compensation commissioner, *elect to pay individually and directly, or from such benefit funds,* department or association, *such compensation and expenses to injured employees or fatally injured employees' dependents. ...*" (Emphasis supplied).

Eastern Associated Coal Corporation elected to become a self-insurer under this statute. As a self-insurer, Eastern was required to pay into the Workmen's Compensation Fund under *W. Va. Code* 1931, 23-2-9, as amended, "a sum sufficient to pay his proper proportion of the expenses of the administration of this chapter, as may be determined by the commissioner." It was not required, however, to pay the quarterly premiums into the general Workmen's Compensation Fund under *W. Va. Code* 1931, 23-2-5, as amended, since it was to insure, on its own, "pecuniary compensation," "medical attention," etc.

In addition to paying the mandatory fee for administrative costs, Eastern made payments into what is called the surplus fund to insure it against two specific hazards, catastrophes and second injuries. *W. Va. Code* 1931, 23-2-9, as amended, which permits self-insurers to participate in these two limited financial arrangements, provides in part:

> "All employers who have heretofore elected, or shall hereafter elect, to pay compensation and expenses directly as provided in this section, shall, unless they give the catastrophe and second injury security or bond hereinafter provided for, pay into the surplus fund referred to in section one, article three of this chapter upon the same basis and in the same percentages, *subject to the limitations herein set forth*, as funds are set aside for the maintenance of the surplus fund out of payments made by premium-paying subscribers, such payments to be made at the same time as hereinbefore provided with respect to payment of proportion of expenses of administration. *In case there be a catastrophe or second injury*, as defined in section one, article three of this chapter, to the employees of any employer making such payments, the employer shall not be liable to pay compensation or expenses arising from or necessitated by the catastrophe or second injury, and such compensation and expenses shall not be charged against such employer, but such compensation and expenses shall be paid from the surplus fund in the same manner and

to the same extent as in the case of premium-paying subscribers." (Emphasis supplied).

A similar provision exists with respect to general subscribers. *W. Va. Code* 1931, 23-3-1, as amended, provides in pertinent part:

"Ten percent of all that shall hereafter be paid into the workmen's compensation fund by subscribers not electing to carry their own risk under section nine, article two of this chapter, shall be set aside for the creation of a surplus fund until such surplus shall amount to the sum of five hundred thousand dollars, after which time the sum of five percent of all the money paid into such fund shall be credited to such surplus fund, until such time as in the judgment of the commissioner, such surplus fund shall be sufficiently large to cover the catastrophe hazard, the second injury hazard, *and all losses not otherwise specifically provided for in this chapter.*" (Emphasis supplied).

This last "catch-all" clause, "and all losses not otherwise specifically provided for in this chapter," is conspicuously absent from the similar provision in *W. Va. Code* 1931, 23-2-9, as amended. The interpretation of this clause and of *W. Va. Code* 1931, 23-4-3, as amended, the statutory provision which appellee relies upon in support of its proposition, is crucial to the resolution of the sole issue in this case. In 1967, *W. Va. Code* 1931, 23-4-3, as amended, provided *inter alia:*

"Except in case of silicosis, the commissioner shall disburse and pay *from the fund* for such personal injuries to such employees as may be entitled thereto hereunder as follows:

"(a) Such sums for medicines, medical, surgical, dental and hospital treatment, crutches, artificial limbs and such other and additional approved mechanical appliances and devices, as may be reasonably required, *but not in excess of three thousand dollars: Provided,* that in special cases where the treatment required, in the opinion of competent medical authority, is such as to necessitate an expenditure in excess of such

amount, the commissioner may pay *out of any available funds* such additional sum as may be necessary, *but such additional sum shall not be charged to the account of the employer.*" (Emphasis supplied).

Appellee contends that, since there is no distinction made between general subscribers and self-insurers in this provision, i.e. the general term "employer" is used, the provision explicitly prohibits the Commissioner from charging any employers, including self-insurers, for medical expenses beyond three thousand dollars.

In adopting appellee's contention, the Workmen's Compensation Appeal Board held *W. Va. Code* 1931, 23-4-3(a), as amended, to be "clear, plain and unambiguous upon the point that the Commissioner shall not charge an employer for medical expenses in any claim in an amount in excess of $3,000.00." We do not agree that this statute is clear on its face and consequently, we look to well-established canons of construction to interpret its meaning. The primary object in construing a statute is, of course, to ascertain and give effect to the intent of the Legislature. As stated in *Spencer v. Yerace,* 155 W. Va. 54, 180 S.E.2d 868 (1971):

"In the construction of statutes, it is the legislative intent manifested in the statute that is important and such intent must be determined primarily from the language of the statute .... In ascertaining the legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation ...." *Id.* at 59-60.

Furthermore, statutes which relate to the same subject matter should be read and applied together, i.e. in *pari materia,* so that the Legislature's intention can be gathered from the whole of the enactments. *State ex rel. Campbell v. Wood,* 151 W. Va. 807, 155 S.E.2d 893 (1967); *State v. Boles,* 147 W. Va. 674, 130 S.E.2d 192 (1963); *State ex rel. Graney & Ford v. Sims,* 144 W. Va. 72, 105 S.E.2d 886 (1958). Also pertinent to this particular statute [23-4-3(a)] is the rule that:

"That which is necessarily implied in a statute, or must be included in it in order to make the terms actually used have effect, according to their nature and ordinary meaning, is as much a part of it as if it had been declared in express terms." Syllabus Point 14, *State v. Harden,* 62 W. Va. 313, 58 S.E. 715 (1907).

Therefore, the Legislature's intent with respect to the $3,000.00 limit on medical expenses cannot be ascertained by simply giving effect to one clause, *i.e.* "but such additional sum shall not be charged to the account of the employer." *W. Va. Code* 1931, 23-4-3, as amended, began with the following sentence:

"Except in case of silicosis, the commissioner shall disburse and pay *from the fund for such personal injuries to such employees as may be entitled* thereto hereunder as follows:" (Emphasis supplied).

Although "employees" is a very general term, it is clear that the Legislature was referring to employees of general subscribers only. In fact, it is as clear as if the express phrase, "employees of general subscribers," had been used. *State v. Harden, supra.* Since only those employers that are general subscribers contribute to the "fund", i.e. the general Workmen's Compensation Fund, only their employees are "entitled" to payments from this Fund.

Except for the small charges for administrative expenses, self-insured employers make no payments into the Workmen's Compensation Fund, because under *W. Va. Code* 1931, 23-2-9, as amended, such employers have elected to self-insure the payment of pecuniary compensation and medical attention. Consequently, the Commissioner would not charge sums for medical expenses up to $3,000.00, as provided in *W. Va. Code* 1931, 23-4-3(a), as amended, except to employees of general subscribers.

Furthermore, the provision which allows the Commissioner to pay sums in excess of $3,000.00 "out of any available funds" also applies only to general subscribers.

Self-insurers have no other available funds. They may participate, as Eastern Associated Coal Corporation did, in the surplus fund, but their participation is pointedly and repeatedly limited in *W. Va. Code* 1931, 23-2-9, as amended, to two specific hazards, catastrophes and second injuries.

*W. Va. Code* 1931, 23-3-1, as amended, on the other hand, provides that ten percent of what general subscribers pay into the Workmen's Compensation Fund shall go to protect against not only catastrophes and second injuries, but also "all losses not otherwise specifically provided for in this chapter." Granted that *W. Va. Code* 1931, 23-2-9, as amended, when referring to self-insurers, states that "compensation and expenses shall be paid from the surplus fund in the same manner and to the same extent as in the case of premium-paying subscribers," such language must not be applied without regard to context. It is prefaced by the limiting clause "[i]n case there be a catastrophe or second injury." Moreover, the previous sentence, which establishes the self-insurer's participation in the surplus fund, does so "subject to the limitations herein set forth." It appears then that the surplus fund is accessible to self-insurers only in the event of catastrophes or second injuries; consequently, there is no "other available fund," in which the self-insurers participate, from which the Commissioner could pay medical expenses in excess of $3,000.00. This conclusion appears more logical in light of the beginning sentence in *W. Va. Code* 1931, 23-2-9, as amended, wherein self-insurers are required to insure, on their own, medical attention, among other things, "of the value at least equal to the compensation provided in this chapter."

As to the last clause, "but such additional sum shall not be charged to the account of the employer," which the Appeal Board found so significant, it appears unlikely that the Legislature, having implicitly referred to general subscribers in the opening sentence and throughout subsection (a), intended its reference to "employer" in this clause to mean general subscribers to the Fund and self-insurers alike. From a purely grammatical viewpoint, subsection (a) is limited in scope by the

sentence it modifies. As previously stated, the opening sentence has reference only to employees of subscribers and thus, subsection (a) could not broaden the meaning of that sentence to include employees of both general subscribers and self-insurers.

At the protest hearing, Alexander Pollit, an employee of the Workmen's Compensation Commission, testified as to the pertinent accounting procedures of the Workmen's Compensation Fund. For several years the Commissioner has divided the surplus fund into different, smaller funds—a catastrophe fund, a second-injury fund, and an unlimited medical expense fund. The Commissioner asserts that the existence of the unlimited medical fund is justified by *W. Va. Code* 1931, 23-4-3(a) and 23-3-1, as amended respectively. The Commissioner has restricted the use of this unlimited medical fund to general subscribers only, believing (1) that the absence of this "catch-all" clause in *W. Va. Code* 1931, 23-2-9, as amended, indicates that the Legislature intended that self-insurers be permitted through the surplus fund to protect against catastrophes and second injuries only; and (2) that *W. Va. Code* 1931, 23-2-9, as amended, in its opening sentence, requires self-insurers to insure payment to their employees for all medical attention, that is, to "at least" the extent provided by the Workmen's Compensation Fund for employees of general subscribers.

This Court has stated that "the Commissioner may exercise not only the powers expressly granted him by statute, but also such additional powers of a procedural or administrative character as are reasonably implied as a necessary incident to the express powers granted the Commissioner . . . ." *Griffith v. Workmen's Compensation Commissioner*, W. Va., 205 S.E.2d 157, 163 (1974). *See also, Colvin v. Workmen's Compensation Commissioner*, 154 W. Va. 280, 175 S.E.2d 186 (1970). Furthermore, support of the Commissioner's interpretation and application of these various provisions is found in the rule which states:

> "Where a statute is of doubtful meaning, the contemporaneous construction placed thereon by

the officers of government charged with its execution is entitled to great weight, and will not be disregarded or overthrown unless it is clear that such construction is erroneous." *Syllabus* point 7., *Evans v. Hutchinson,* W. Va., 214 S.E.2d 453 (1975).

We hold, when *W. Va. Code* 1931, 23-2-9, 23-3-1, and 23-4-3, as respectively amended, are read in *pari materia,* that the Commissioner is authorized to establish an unlimited medical expense fund and to restrict its use to general subscribers, since the money available for such a fund could only come from ten percent of the premiums that the general subscribers pay into the Workmen's Compensation Fund. Consonant with *W. Va. Code* 1931, 23-2-9, as amended, the Commissioner is likewise authorized by the law to require that self-insurers insure payment for all medical attention incident to a compensable claim, at least to the extent provided by the Workmen's Compensation Act.

The constitutional objections raised concerning the Commissioner's procedures in charging self-insured subscribers for extraordinary medical expenses are without merit. Due process requires, of course, that one aggrieved by a ruling have the opportunity to protest the ruling. That remedy is more than adequately accorded a self-insurer under the statute. *See, W. Va. Code* 1931, 23-5-1, as amended. In that the remedy is provided self-insurers and general subscribers alike, we apprehend no basis for the claim that Eastern has been denied the equal protection of the law by the Commissioner.

For the reasons stated, this Court is of the opinion that the decision of the Workmen's Compensation Appeal Board was incorrect. The order is reversed and the case is remanded to the Workmen's Compensation Commissioner with directions to enter an appropriate order.

*Reversed and remanded.*