CECIL H. MULLENS

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER

*and*

ISLAND CREEK COAL CO.

(No. 13611)

Decided April 6, 1976.

*William Mitchell, Legal Div., Workmen's Compensation Commission,* for Compensation Commissioner.

*Dan O. Callaghan* for appellee.

NEELY, JUSTICE:

This appeal from the Workmen's Compensation Appeal Board involves a controversy between the Workmen's Compensation Commissioner and Island Creek Coal Company, an employer who has elected to provide its

own system of compensation under *W. Va. Code*, 23-2-9 [1947].[1] The question presented is whether a self-insured employer who pays into the surplus fund, *W. Va. Code*, 23-3-1 [1947] is responsible for continuing medical expenses after the adjudication of a life award under the second injury provision of *W. Va. Code*, 23-3-1 [1947], or whether such medical expenses should be paid from the second injury reserve of the surplus fund. In light of the importance of this case to the administration of the fund, we granted a rehearing, after which we changed some of the language and one of the holdings of the original opinion.

In February 1968, the claimant suffered a herniated lumbar disc while lifting a heavy piece of metal. The claim was held compensable on a lost-time basis in May 1968 because the claimant was being treated at the same time for a noncompensable cervical injury. The claimant underwent lumbar surgery in July 1967, and additional surgery in March 1968. A cervical disc was removed in September 1968, and following an examination by a physician, the claimant was granted a total permanent disability award in September 1972 under the second injury statute because of previous compensable injuries. The employer objected, but nevertheless, the Commissioner affirmed the initial life award in November 1972 and charged the employer with 72% permanent partial disability attributable to the lumbar disc injury of February 1968. The excess above 72% for the life award is being paid from the second injury reserve of the surplus fund under *W. Va. Code*, 23-3-1 [1947].

After payments began from the second injury reserve of the surplus fund, the employer protested the payment of further medical expenses. The Commissioner maintained that an award of permanent total disability pursuant to the second injury provisions does not relieve the employer of responsibility for payment of medical

---

[1]*W. Va. Code*, 23-2-9 [1947] was amended in 1974; however, the law cited throughout this opinion is that applicable at the date of the injury. *Ball v. Compensation Commissioner*, W. Va., 194 S.E.2d 229 (1973).

expenses for *treatment* of the compensable injury. A hearing was held on this question which disclosed that the claimant has continuing medical problems which will require medical treatment for an indefinite period. The Commissioner affirmed his determination that the employer is liable for the payment of these continuing medical expenses and denied the employer's motion to charge future medical bills to the second injury reserve of the surplus fund. The employer then appealed to the Appeal Board.

The Appeal Board determined that the Commissioner must pay from the surplus fund medical expenses incurred by reason of a second injury to an employee of a self-insured employer who pays into such surplus fund, and further determined that there is no statutory authority for the Commissioner to direct a self-insured employer to pay medical bills in excess of $3,000.

We affirm the Appeal Board in both holdings and distinguish this case from the case of *Smith v. State Workmen's Compensation Commissioner and Eastern Associated Coal Corporation,* _____ W. Va. _____, 219 S.E.2d 361 (1975) on the grounds that *Smith* involved a first injury and the injured employee was employed by a self-insured employer who was liable for all expenses attendant upon a first injury against which the employer had elected to insure himself.[2] In the case *sub judice,* Mul-

---

[2]"Except for the small charges for administrative expenses, self-insured employers make no payments into the Workmen's Compensation Fund, because under *W. Va. Code,* 23-2-9, *as amended,* such employers have elected to self-insure the payment of pecuniary compensation and medical attention. Consequently, the Commissioner would not charge sums for medical expenses up to $3,000.00, as provided in *W. Va. Code,* 23-4-3(a), *as amended,* except to employees of general subscribers.

"Furthermore, the provision which allows the Commissioner to pay sums in excess of $3,000.00 'out of any available funds' also applies only to general subscribers. Self-insurers have no other available funds. They may participate, as Eastern Associated Coal Corporation did, in the surplus fund, but their participation is pointedly and repeatedly limited in *W. Va. Code,* 23-2-9, *as amended,* to two specific hazards, catastrophes and second injuries." *Smith, supra,* at 366.

lens was also an employee of a self-insured employer; however, the employer paid into the surplus fund on the same terms and conditions as regular subscribers to protect himself from the second injury hazard and the catastrophe hazard. Consequently, the employer should share with regular subscribers of the fund the immunity from liability for medical expenses in excess of $3,000 attendant upon a second injury.

This Court holds that when an employee of a self-insured employer who pays into the surplus fund sustains a second injury, the employer is liable for medical expenses up to $3,000, and that thereafter the surplus fund is chargeable for such medical payments. This Court's holding in this regard is based upon the wording of *W. Va. Code,* 23-2-9 [1947] which concerns employers who elect to provide their own system of employee compensation for work-related injuries. The relevant paragraphs in that section say:

"All employers who have heretofore elected, or shall hereafter elect, to pay compensation and expenses directly as provided in this section, *shall,* unless they give the catastrophe and second injury security or bond hereinafter provided for, *pay into the surplus fund referred to in section one, article three of this chapter upon the same basis and in the same percentages, subject to the limitations herein set forth, as funds are set aside for the maintenance of the surplus fund out of payments made by premium-paying subscribers,* such payments to be made at the same time as hereinbefore provided with respect to payment of proportion of expenses of administration. In case there be a catastrophe or second injury, as defined in section one, article three of this chapter, to the employees of any employer making such payments, *the employer shall not be liable to pay compensation or expenses arising from or necessitated by the catastrophe or second injury, and such compensation and expenses shall not be charged against such employer, but such compensation and expenses shall be paid from the*

*surplus fund in the same manner and to the same extent as in the case of premium-paying subscribers.*

"If an employer elect to make payments into the surplus fund as aforesaid, then the bond or other security required by this section shall be of such amount as the commissioner considers adequate and sufficient to compel or secure to the employees or their dependents payment of compensation and expenses, *except any compensation and expenses that may arise from, or be necessitated by, any catastrophe or second injury, as defined in section one, article three of this chapter, which last are secured by and shall be paid from the surplus fund as hereinbefore provided."* [emphasis supplied by Court]

The *Code* section quoted above specifically refers to "compensation and expenses" with regard to second injuries which indicates that something further than mere compensation is contemplated by the statute. If the Commissioner's position were correct, the Legislature would not have used the phrase "compensation and expenses." The inclusion of the word "expenses" obviously had some purpose, and the reasonable inference from a complete reading of the statutory scheme of the Workmen's Compensation provisions of the *Code* indicates that "expenses" had reference to medical charges, among other things.

Furthermore, under the provisions quoted above all employers who have elected to pay compensation expenses directly, and have not elected to bear their own risk for catastrophe and second injury, are to pay into the surplus fund upon the same basis and in the same percentages as premium-paying subscribers. *W. Va. Code,* 23-3-1 [1947] then provides how charges for the surplus fund are to be made:

"Ten percent of all that shall hereafter be paid into the workmen's compensation fund by subscribers not electing to carry their own risk under section nine, article two of this chapter, shall

be set aside for the creation of a surplus fund until such surplus shall amount to the sum of five hundred thousand dollars, after which time the sum of five percent of all the money paid into such fund shall be credited to such surplus fund, until such time as in the judgment of the commissioner, such surplus fund shall be sufficiently large to cover the catastrophe hazard, the second injury hazard, and *all losses not otherwise specifically provided for in this chapter.*" [emphasis supplied by Court]

That section then goes on to define "second injury" as follows:

"If an employee who has a definitely ascertainable physical impairment, caused by a previous injury, irrespective of its compensability, becomes permanently and totally disabled through the combined effect of such previous injury and a second injury received in the course of and as a result of his employment, the employer shall be chargeable only for the compensation payable for such second injury: Provided, however, that in addition to such compensation, and after the completion of the payments therefor, the employee shall be paid the remainder of the compensation that would be due for permanent total disability out of a special reserve of the surplus fund known as the second injury reserve, created in the manner hereinbefore set forth."

Accordingly, an employer who chooses to pay into the surplus fund, rather than post a bond and carry its own risk for both second injury and catastrophe hazards, is to be charged at the same rate and in the same proportions as premium-paying subscribers, and is to be accorded the same benefits. One of those benefits is exoneration from further charges above and beyond the permanent partial disability attributable to a second injury when a combination of injuries warrants a life award. Although in the second injury statute itself the word "expenses" is omitted and only the word "compensation" is used, this statute obviously contemplates ex-

penses as part of "compensation" as this statute applies with equal force to full premium-paying subscribers, and the Commissioner has never questioned that employees of full premium-paying subscribers covered under the second injury statute are entitled to medical expenses chargeable to the second injury reserve.

Accordingly, the order of the Workmen's Compensation Appeal Board is affirmed and the case is remanded to the State Workmen's Compensation Commissioner with directions to enter an appropriate order.

*Affirmed.*