# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In re: G. M.**

**No. 19-0948** (Wood County 19-P-119)

**FILED**

**June 18, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner S.M., on behalf of G.M., a minor, by counsel Walt Auvil and Kirk Auvil, appeals the Circuit Court of Wood County's September 19, 2019, denial of her petition for change of gender designation on G.M.'s birth certificate. [1]

This Court has considered the party's brief and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the brief, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

G.M., biologically female, successfully underwent female to male transitional gender reassignment surgery on June 17, 2019. On August 30, 2019, petitioner S.M., on behalf of G.M., filed, in the Circuit Court of Wood County, a petition for change of gender, seeking for "the court to declare [G.M.'s] gender as male and to order that a new birth certificate be issued to reflect that gender change." In filing her petition for change of gender, petitioner submitted medical documentation, including letters from G.M.'s physicians regarding her transition from female to male.

By order entered September 19, 2019, the circuit court denied the petition. The court referenced West Virginia Code § 16-5-25(a), which provides that "[i]n order to protect the integrity and accuracy of vital records, a certificate or report registered under this article may be amended only in accordance with the provisions of this article or legislative rule." Citing West Virginia Code § 16-5-25(a), the court reasoned that amending a birth certificate to "reflect a gender change" did not fall within the statutory authority of the court. It is from the circuit court's September 19, 2019, order denying her petition for change of gender that petitioner now appeals.

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

On appeal, petitioner asserts one assignment of error. Petitioner argues that the circuit court erred in its interpretation of West Virginia Code § 16-5-25 as a limitation of the court's ability to grant the underlying petition. This Court has long held that "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W. Va. 573, 466 S.E.2d 424 (1995). Further, we have stated that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

Generally, petitioner contends that West Virginia Code § 16-5-25 simply governs the administrative procedures for processing changes to birth certificates and does not serve as an "enumeration of judges' authority to grant or deny" petitions for change of gender. To address petitioner's assignment of error, we must examine West Virginia Code § 16-5-25. West Virginia Code § 16-5-25 is titled "[c]orrection and amendment of vital records," and provides, in relevant part, as follows:

(a) In order to protect the integrity and accuracy of vital records, a certificate or report registered under this article may be amended only in accordance with the provisions of this article or legislative rule.

(b) A certificate or report that is amended under this section must indicate that it has been amended, except as otherwise provided in this section or by legislative rule: *Provided*, That the department shall prescribe by legislative rule the conditions under which additions or correction of minor deficiencies, including, but not limited to, the omission or misspelling of a first name, may be made to certificates or records within one year of the event without the certificate indicating that it has been amended.

(c) The State Registrar shall maintain a record which identifies the evidence upon which the amendment was based, the date of amendment, and the identity of the person making the amendment.

(d) Upon receipt of a certified copy of a court order of a court of competent jurisdiction changing the name of a person born in this state, and upon request of the person whose name is to be changed or his or her parent, guardian or legal representative, the State Registrar shall amend the certificate of birth to reflect the new name.

(e) If the required evidentiary documentation is not filed with the application for amending a vital record or the State Registrar has cause to question the validity or adequacy of the evidentiary documentation, the State Registrar may not amend the vital record and shall advise the applicant of his or her right to seek an order from a court of competent jurisdiction.

(f) When the State Registrar amends a certificate or report, he or she shall report the amendment to any other custodian of the vital record.

In our recent decision in *State ex. rel. Frazier v. Hon. William S. Thompson, et al.*, Nos. 19-0754 and 19-0755, 2020 WL 1982904, at *6 (Apr. 24, 2020), we discussed statutory construction and legislative intent and noted that:

> [i]n matters involving statutes, we are bound by the rules of statutory construction. We first must determine the Legislature's intent in enacting the provision. *See* Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975) ("The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."). Then, we consider the precise words employed in the enactment. Where such language is plain, we apply the subject statutory language as written without any further interpretation. *See* Syl. pt. 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968) ("Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation."); Syl. pt. 5, *State v. Gen. Daniel Morgan Post No. 548, V.F.W.*, 144 W. Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute.").

Here, the express language of West Virginia Code § 16-5-25(a) provides that "a certificate . . . registered under this article may be amended ***only*** in accordance with the provisions of this article or legislative rule." (Emphasis added). Thus, the intended effect of the Legislature is plain. In order to protect the "integrity and accuracy" of vital records, only in accordance with the provisions of West Virginia Code § 16-5-25, Chapter 16 Article 5 of the West Virginia Code, or legislative rule can a vital record, such as a birth certificate, be amended. As the intended effect of the Legislature is plainly stated in West Virginia Code § 16-5-25, said statute should be applied as written, including the expressed limitation of the circuit court's authority. Accordingly, in recognizing its limitation to act under West Virginia Code § 16-5-25(a), we find that the circuit court did not err in its denial of petitioner's petition for change of gender.

As cited hereinabove, in cases, such as the instant case, where the legislative intent is plain, it is the duty of the circuit court not to construe, but to apply the statute. The circuit court herein reviewed and referenced the express language of West Virginia Code § 16-5-25, including its limiting language, and rightfully determined that it did not have the authority to grant petitioner's requested relief. There is no indication in the record that petitioner provided any authority, either under West Virginia Code § 16-5-25, Chapter 16 Article 5 of the West Virginia Code, or any legislative rule, to support her contention that the circuit court had authority to order the "change of gender" on a birth certificate. Without such authority, the court was unable to grant the requested relief.

Petitioner cites West Virginia Code § 16-5-25(d) (requiring the State Registrar to defer to the circuit court's order regarding name change) and argues this code section implies that the circuit court has "discretion to grant" a petition for change of gender. We disagree. A request for name change is wholly different from a request for "change of gender" in that a petition for name change is governed by West Virginia Code § 48-25-101, which expressly provides circuit courts

with the authority, under certain enumerated conditions, to order a change of name. There is no such statutory code section or legislative rule expressly extending to circuit courts the authority to change the designation of gender on a vital record. Absent such authority, we find no merit in petitioner's argument.

For the foregoing reasons, we affirm the Circuit Court of Wood County's September 19, 2019, order denying petitioner's petition for change of gender.

Affirmed.

**ISSUED:** June 18, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**DISSENTING:**

Justice Margaret L. Workman

Workman, J., dissenting:

I dissent from this decision to affirm the lower court ruling because the majority either completely missed the applicable legislative rule which makes clear that the lower court had the authority to rule on this issue; or because they chose to "duck" a controversial issue. Furthermore, because this case encompasses an issue of first impression and fundamental public importance, it should have been set for argument and consideration under Rule 20 of the West Virginia Rules of Appellate Procedure rather than resolved in a memorandum decision.

Even if the legislative rule was not so clear on its face, the statute itself does not restrict a circuit court's authority to rule on the issue at hand—a petition for a change of gender on a birth certificate. West Virginia Code § 16-5-25—entitled "Correction and amendment of vital records"—governs West Virginia's administrative procedures for processing changes to birth certificates. West Virginia Code § 16-5-25(a) provides: "In order to protect the integrity and accuracy of vital records, a certificate or report registered under this article may be amended only in accordance with the provisions of this article *or* legislative rule." (Emphasis added). While the statute is silent with regard to a petition for a change of gender, the legislative rule provides: "Any other amendment to vital records not specifically provided for in this rule or in the W. Va. Code or one which was previously rejected by the State Registrar shall be made in accordance with an Order from a court of competent jurisdiction." W.Va. C.S.R. § 64-32-12.2.d.

The majority fails to examine or discuss the administrative rule, and therefore, mistakenly concludes that the statute expressly limits a circuit court's authority. In fact, however, the

4

legislative rule recognizes that courts have broad discretion to rule on specific matters not addressed in West Virginia Code § 16-5-25.

Though never addressed by this Court, the amendment of a birth certificate with respect to gender is not novel. A majority of states have allowed it in practice for some time. *See In re Heilig,* 816 A.2d 68 (Md. 2003) (recognizing that, at the time, twenty-two states had enacted statutes expressly enabling such amendments and twenty states had statutes dealing generally with amendments to birth certificates); *see also* Dean Spade, *Documenting Gender,* 59 Hastings L.J. 731, 768 (2008) (noting that forty-seven states allow gender change on birth certificates and twenty-eight of these states "specifically authorize gender reclassification by statute or administrative ruling, while the other nineteen have no written rule stating that they allow sex designation change, but in practice do provide sex designation change upon application").

Addressing the precise issue raised here, the court in *Heilig* stated: "As should be evident, we do not rest our holding that the Circuit Court had jurisdiction over Mr. Heilig's petition solely on the basis of [the relevant statute], but rather on the conclusion that his action fell within the general equity jurisdiction of the court." 816 A.2d at 85. The court in astutely observed that the statute "simply recognizes the existence of that jurisdiction." *Id.*; *accord In re Petition for Change of Birth Certificate*, 22 N.E.3d 707, 709 (Ind. Ct. App. 2014).

Likewise, West Virginia's "circuit courts are constitutional tribunals, having been created and provided for by the Constitution itself. Constitution of West Virginia, Article VIII, Section 1." *Halltown Paperboard Co. v. C. L. Robinson Corp.*, 150 W. Va. 624, 627, 148 S.E.2d 721, 724 (1966). Under our Constitution, "circuit courts are expressly granted original and general jurisdiction of all matters at law, where the amount in controversy exceeds fifty dollars, and of all cases in equity." *Id.* Therefore, it is beyond fair debate that the Circuit Court of Wood County has the inherent authority and equity power to rule on the petition at hand. Its power flows from our Constitution, not the statute relied upon by the majority.

It alarms me that the majority's analysis suggests that they believe that when there is no specific statute in place, even when an individual's liberty interests are at issue, that courts have no authority to resolve such issues. I adamantly reject this notion. West Virginia courts are not subordinate to the Legislature and courts have a duty to rule on such issues even where there is not express statutory approval and direction, as is the case here.

> Under the Due Process Clause of the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law." The fundamental liberties protected by this Clause include most of the rights enumerated in the Bill of Rights. In addition, these liberties extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs.

*Obergefell v. Hodges*, 135 S. Ct. 2584, 2597-98 (2015) (citations omitted). Our courts are vested with the constitutional authority and duty to protect these liberties. Thus, even if our Legislature expressly stated that a gender change to a birth certificate is a forbidden practice in this State, an individual could seek redress in the courts. *See e.g., Arroyo Gonzalez v. Rossello Nevares*, 305 F.

Supp. 3d 327, 333 (D.P.R. 2018) (finding birth certificate policy that permitted name change on birth certificate, while prohibiting gender change violated plaintiffs' constitutional rights). History teaches us "to jealously guard the judicial power against encroachment from the other two branches of government and to conscientiously perform our constitutional duties and continue our most precious legacy."[2]

For all of the reasons set forth herein, I would reverse the order of the circuit court, remand the case to the circuit court with directions to rule on Petitioner G.M.'s petition, and issue a signed opinion outlining appropriate factors courts should consider when ruling on such request.

---

[2] *State ex rel. Ohio Acad. of Trial Law. v. Sheward*, 715 N.E.2d 1062, 1079 (Ohio 1999).