**FILED**

**June 5, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

_____

No. 25-9

_____

In Re M.G., S.G., and O.G.

_____

Appeal from the Circuit Court of Berkeley County
The Honorable Debra McLaughlin, Judge
Case Nos. CC-02-2023-JA-20,
CC-02-2023-JA-21, and CC-02-2023-JA-22

AFFIRMED, IN PART, VACATED IN PART,
AND REMANDED WITH INSTRUCTIONS

_____

Submitted: April 1, 2026
Filed:  June 5, 2026

Christian J. Riddell, Esq.
Riddell Law Group
Martinsburg, West Virginia
Counsel for Petitioner

John B. McCuskey, Esq.
Attorney General
Kristen E. Ross, Esq.
Assistant Attorney General
Office of the Attorney General
Martinsburg, West Virginia,
Counsel for Respondent DHS

Debbie Flowers Payne, Esq.
Law Office of Debbie Flowers Payne
Martinsburg, West Virginia
Counsel for Respondent R.G.

Stephanie J. Shepherd, Esq.
Law Office of Stephanie Shepherd
Morgantown, West Virginia
Guardian ad litem

JUSTICE TITUS delivered the Opinion of the Court.

JUSTICE CHARLES S. TRUMP IV, deeming himself disqualified, did not participate in the decision.

JUDGE HILARY BRIGHT, sitting by temporary assignment.

**SYLLABUS BY THE COURT**

1.      "This Court reviews the circuit court's orders in abuse and neglect proceedings using the three following standards: (1) substantive rulings, such as whether the evidence supports a conclusion that a child has been abused or neglected or whether termination of parental rights is appropriate, are reviewed for abuse of discretion; (2) factual findings supporting substantive rulings are reviewed for clear error; and (3) to the extent review of the order implicates an issue of law or requires statutory interpretation, our review is de novo." Syllabus Point 1, *In re K.S.*, No. 24-740, 2026 WL 1362143, at *1 (W. Va. May 15, 2026).

2.      "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus Point 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

3.      In making a dispositional decision under West Virginia Code § 49-4-604(c)(6), a circuit court has the discretion to terminate a respondent parent's custodial and/or guardianship rights, while leaving intact his or her parental rights.

4.      "'The controlling standard that governs any dispositional decision remains the best interests of the child.' Syllabus Point 4, in part, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014)." Syllabus Point 4, *In re H.T.*, 250 W. Va. 11, 902 S.E.2d 143 (2024).

i

**TITUS, Justice:**

Petitioner Mother A.B. appeals the Circuit Court of Berkeley County's December 6, 2024, order terminating her custodial and guardianship rights to her children, M.G., S.G., and O.G,[1] arguing that termination was in error because she completed the terms of her improvement period and substantially corrected the issues for which she was adjudicated. She also argues that the circuit court's August 18, 2023, adjudicatory order contains findings that are not supported by the record. As explained below, the circuit court did not abuse its discretion in terminating the petitioner's custodial and guardianship rights based on its finding that she did not make sufficient improvement and that it was not in the children's best interest to return to her custody. While the evidence supports adjudication, we agree with the petitioner that the adjudicatory order contains certain clearly erroneous findings. We therefore affirm the dispositional order, affirm the adjudicatory order, in part, but vacate it, in part, and remand this case for amendment of the adjudicatory order consistent with this decision.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The West Virginia Department of Human Services ("DHS") filed an abuse and neglect petition in February 2023, after it received referrals alleging that the petitioner

---

[1] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

1

emotionally abused the children and failed to protect S.G. from self-harming behaviors. In its petition, the DHS alleged that the petitioner abused and neglected the children by failing to provide necessary food, clothing, shelter, supervision, and medical care; engaging in domestic violence with the children' using excessive corporal punishment; and physically and emotionally abusing the children. According to the petition, the petitioner broke down S.G.'s bedroom door, threatened her with a spiked baseball bat, and joked about S.G.'s feelings of wanting to self-harm. The DHS further alleged that the petitioner called the children derogatory names, including racial slurs, and threw objects at M.G., hitting him with a shoe.[2]

The circuit court held two adjudicatory hearings in July 2023. A Child Protective Services ("CPS") worker testified that the children confirmed the door incident, which the worker considered to be domestic violence against the children. The petitioner testified, generally asserting that the children's father caused her outbursts and that the children's allegations were embellished. Regarding the allegations of verbal abuse, the petitioner testified that many of the things she said were in jest; the petitioner claimed that her use of the "n-word" towards the children was "black vernacular," and a term of endearment given the race of her children, their father and herself. She denied threatening any of the children with a spiked bat but admitted she possessed it. The father testified to an incident in which the petitioner threw a bottle of hot sauce at him but missed and put a

---

[2] The petitioner waived her right to a preliminary hearing. The children were placed in the custody of their non-offending father, R.G.

hole in the kitchen wall; he stated that the petitioner used her spiked bat to beat down two of his indoor security cameras.

In its August 18, 2023, adjudicatory order, the circuit court stated that it had reviewed the children's forensic interviews and found that the children were credible. It concluded that the petitioner abused the children by engaging in domestic violence in the children's presence, including the time she broke down a door with both S.G. and O.G. inside the room and threatened S.G. with the spiked baseball bat. The circuit court stated that the petitioner "engaged in a pattern of emotional abuse toward the children by repeatedly using hurtful language toward the children, name calling and berating them, making the children feel depressed, and making [S.G.] wish to harm herself[.]" It stated that the petitioner "has not made any acknowledgement of her abuse and neglect of the children or acknowledged that her actions caused the children harm" and "continued to emotionally abuse the children during supervised visits[.]" The circuit court concluded that it was in the children's best interest to remain in the sole custody of their father. However, the circuit court made certain findings in its order that the parties agree were *not* based on the record, namely that the petitioner failed to provide for the children's basic needs, used excessive corporal punishment, and demonstrated a pattern of physical abuse of the children.[3]

---

[3] The matter was transferred to a different judge after adjudication. The petitioner filed objections to the circuit court's adjudicatory order. The guardian filed a response in support of the adjudicatory order. The circuit court denied the petitioner's request to amend the adjudicatory order.

The petitioner filed a motion requesting a post-adjudicatory improvement period as well as in-camera interviews of the children prior to disposition. The circuit court granted both requests. During the in camera interviews, S.G. recounted numerous instances of verbal abuse by the petitioner, mostly directed at S.G. and M.G. S.G. stated that the petitioner made disparaging remarks about S.G.'s appearance and called M.G., who suffers from developmental disabilities, a "retard" and a "dumbass." The child reported that the petitioner whispered in her ear during a supervised visit that the CPS case was her fault. The child confirmed that the petitioner threatened to hurt her with a spiked baseball bat and broke down her locked bedroom door while she was changing clothes.

The circuit court held two dispositional hearings in November 2024. The guardian stated that the children believed that the petitioner had not made an overall change in her behavior. The DHS noted that the petitioner had made so little progress that she was still having supervised visits, so reunification was not recommended. The petitioner testified that she completed the terms of her improvement period and generally claimed that her behavior toward her children was a reaction to the father's statements and behaviors. She admitted that her attempt at humor harmed her children, noting that her comments about S.G. slouching and not brushing her teeth were meant to be lighthearted. The petitioner accused the father of coercing and manipulating the children into opposing reunification and visitation with her. A CPS worker testified that she did not have any information that suggested that the petitioner did not comply with her improvement period other than her inappropriate interactions with the children. However, the worker noted that

4

the petitioner's visits with the children were originally supervised, then unsupervised, and then changed back to being supervised based upon the children's reports that they felt uncomfortable during unsupervised visits.[4]

In its December 6, 2024, dispositional order, the circuit court found that the petitioner's "biggest impediment to . . . change is her unwillingness to acknowledge the abuse and neglect" and that she "checked the boxes" of her improvement period requirements but maintained throughout the proceeding that the father caused her to have abusive reactions. The circuit court stated that the petitioner continued to assert that her "actions were never her fault, but just the way she reacted to her unfounded reports of [the father's] criminal activity, domestic violence, or whatever bad actions she wanted the Court to believe about Non-Offending Father." The circuit court noted that the petitioner "ultimately stated that her insight gained from the services . . . [were] nothing more than a communication issue." While the petitioner admitted she had anger issues that impacted

---

[4] The petitioner requested that the circuit court conduct an additional in camera interview of the children to ascertain why unsupervised community visits were suspended. The children's guardian ad litem ("guardian") and the father opposed this request. The guardian stated that the children did not want to testify again. The circuit court denied the petitioner's request, stating that it was contrary to the best interests of the children. The petitioner contends that her due process rights were violated by the circuit court's ruling. However, we conclude that the circuit court did not abuse its discretion. We note that Rule 8 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings establishes a rebuttable presumption that the potential psychological harm to the child outweighs the necessity of the child's testimony. In addition, this Court has held that "[i]n a child abuse and neglect civil proceeding held pursuant to West Virginia Code § 49–6–2 (2009) [now West Virginia Code § 49–4–601], a party does not have a procedural due process right to confront and cross-examine a child." Syl. Pt. 7, in part, *In re J.S.*, 233 W. Va. 394, 758 S.E.2d 747 (2014).

5

the children, she blamed the father for her negative behavior and blamed the DHS for damaging her relationship with the children. The circuit court expressed concern that after two therapy sessions with S.G., the petitioner accused the therapist of conducting the wrong type of therapy and refused to participate further. Additionally, the circuit court expressed "grave concerns that the [petitioner] is unable to separate her needs from those of her children and place the needs of the children above her own." The circuit court ultimately terminated the petitioner's custodial and guardianship rights. It is from the dispositional order that the petitioner appeals.[5]

## II.

## STANDARD OF REVIEW

The petitioner argues that the circuit court committed reversible error in its adjudicatory order as well as its dispositional order. As we recently clarified, on appeal from a final order in an abuse and neglect proceeding,

> [t]his Court reviews the circuit court's orders in abuse and neglect proceedings using the three following standards: (1) substantive rulings, such as whether the evidence supports a conclusion that a child has been abused or neglected or whether termination of parental rights is appropriate, are reviewed for abuse of discretion; (2) factual findings supporting substantive rulings are reviewed for clear error; and (3) to the extent review of the order implicates an issue of law or requires statutory interpretation, our review is de novo.

---

[5] The children remain in the custody of their non-abusing father, and his parental rights remain intact. M.G. has reached the age of majority.

6

Syl. Pt. 1, *In Re K.S.*, No. 24-740, 2026 WL 1362143, at *1 (W. Va. May 15, 2026).  With these standards in mind, we consider the parties' arguments.

## III.

## DISCUSSION

The petitioner argues that various errors by the circuit court undermine its adjudication and disposition in this case.  Specifically, she contends that the adjudicatory order contains findings that are not supported by the record and that termination was in error because she completed the terms of her improvement period and substantially corrected the issues for which she was adjudicated.

*A.  Adjudication*

The petitioner first argues that "[a]lthough it appears that the [c]ircuit [c]ourt acted within its discretion, and reasonably based on the evidence, regarding findings of verbal abuse by [the] [p]etitioner and domestic violence between the parties affecting the children," its adjudicatory order includes findings that are not supported by the record.  Specifically, the petitioner argues that there is nothing in the record that supports the findings that she failed to provide for the children's basic needs, used excessive corporal punishment, or demonstrated a pattern of physical abuse of the children.  While the petitioner concedes that "there are additional grounds found within the record supporting

7

a finding of abuse/neglect" against her, she contends that "these factual discrepancies matter inordinately, as they affected the results of the entire case."[6] On appeal, the DHS and the guardian agree with the petitioner that certain grounds for adjudication were not supported by the record. However, the DHS and the guardian argue that the petitioner's adjudication for verbally abusing the children and engaging in domestic violence that affected the children was supported by the record.

This Court has held that a circuit court's "finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" Syl. Pt. 1, in part, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011) (quoting Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996)). We agree with the parties that the circuit court made clearly erroneous findings in its adjudicatory order because the record does not show that the petitioner failed to provide for the children's basic needs, used excessive corporal punishment, or demonstrated a pattern of physical abuse of the children.

Nevertheless, the record supports the circuit court's findings that the petitioner engaged in verbal and emotional abuse of the children and that she engaged in

---

[6] The petitioner also argues that the circuit court erred by refusing to consider her objections to the adjudication order. However, that argument is not supported by the record.

domestic violence toward the children. S.G. stated that the petitioner called M.G., who suffers from developmental disabilities, a "retard" and "dumbass." The child also described the petitioner making fun of her feelings of self-harm, stating that the petitioner would "mock" her when she wanted to cut herself. S.G. stated that she despised her mother "because of the things she has done to me. She gave me a lot of trauma. She made me suicidal. I attempted it five times." The petitioner engaged in domestic violence toward the children when she burst through a locked door when S.G. and O.G. were in the room, and threatened S.G. with a spiked baseball bat. S.G. explained that "the side hinges [of the door] were destroyed, [and] part of the wall was just torn off." M.G. stated that prior to this door incident, S.G. had "just ran into her room because she was super scared."

We therefore affirm the circuit court's adjudicatory order in part but vacate it, in part, and remand with directions that the court enter a corrected adjudicatory order to remove the unsupported findings of abuse or neglect.[7]

*B. Disposition*

---

[7] As the disposition in this case was termination of the petitioner's custodial and guardianship rights only, it is particularly important that the adjudicatory order correctly identify the conditions of abuse and neglect because those findings will be relevant to any future proceedings. Specifically, in the event that there is a later modification of disposition under Rule 46 of the Rules of Procedure for Child Abuse and Neglect Proceedings and West Virginia Code § 49-4-606, the circuit court will refer to the adjudicatory findings to determine if there has been the requisite "material change of circumstances."

The petitioner next argues that the circuit court erred by terminating her custodial and guardianship rights because she completed the terms of her improvement period and substantially corrected the issues for which she was adjudicated. On the other hand, the DHS and the guardian support the circuit court's dispositional order and contend that the petitioner had not made sufficient improvement to justify the return of the children to her custody. The DHS argues that the petitioner "referred to the case as 'war' between herself and [the father] and continuously failed to acknowledge that her anger management issues, domestic violence, emotional manipulation, and harmful slurs and/or insults harmed the children." The guardian contends that the petitioner "cannot accept reasonable scrutiny of her conduct and reacts angrily to anyone who disagrees with her[,] . . . has an unmitigated hatred of R.G. that informs much of her behavior," and "does not prioritize the needs and reasonable requests of her children above her own feelings."

The circuit court is vested with the discretion to "determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child." Syl. Pt. 6, in part, *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991). "In making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). Moreover, "it is possible for an individual to show 'compliance with

10

specific aspects of the case plan' while failing 'to improve . . . [the] overall attitude and approach to parenting.'" *In re Jonathan Michael D.*, 194 W. Va. 20, 27, 459 S.E.2d 131, 138 (1995) (quoting *W. Va. Dept. of Hum. Servs. v. Peggy F.*, 184 W. Va. 60, 64, 399 S.E.2d 460, 464 (1990)).

In this case, ample evidence supports the circuit court's conclusion that the petitioner did not make sufficient improvement to warrant the return of the children to her custody. At disposition, the petitioner continued to minimize the gravity of her troubling behavior and focused on complaining about the children's father. As noted above, the circuit court found that the petitioner failed to acknowledge the problems identified at adjudication, creating an impediment to real change. The petitioner acknowledged that she "said some disparaging remarks that made the children feel sad[.]" Tellingly, the petitioner quickly returned to blaming the father, stating: "I believe that I allowed the reactive abuse to make me react in a way that was not in the best interest of the children at the time." However, the petitioner was not reacting to the father's alleged abuse when she burst through the children's bedroom door, knocking it off the hinges, and threatened S.G. with a spiked baseball bat. Rather, the petitioner was reacting to what she perceived was her daughter disrespecting her. Critically, the petitioner never acknowledged her role in engaging in domestic violence against the children and how that harmed them emotionally. Courts are permitted to terminate parental, custodial, and/or guardianship rights on this basis, and the circuit court here did not abuse its discretion in doing so. *See In re A.W.*, No. 20-0830, 2021 WL 1549949, at *3 (W. Va. Apr. 20, 2021) (memorandum decision)

11

("petitioner rendered the conditions of abuse and neglect at issue wholly untreatable through his failure to accept the basic truth of his conduct. This fact is determinative of all issues raised on appeal."); *see also* W. Va. Code § 49-4-604(c)(6) (permitting termination of parental, custodial, and guardianship rights where there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future").

As this Court has stated, "[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect . . . results in making the problem untreatable[.]" *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quotation marks and citations omitted). In addition, West Virginia Code § 49-4-604(d) defines "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected" as meaning "that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Given the petitioner's inability to correct the conditions of abuse and neglect due to her refusal to acknowledge them, it is clear the circuit court did not abuse its discretion in terminating her custodial and guardianship rights.

Although the circuit court imposed a less drastic dispositional alternative by only terminating the petitioner's custodial and guardianship rights, in her final assignment

12

of error, the petitioner argues that, under the plain language of West Virginia Code § 49-4-604(c)(6), a circuit court may only terminate "parental, custodial *and* guardianship rights." (Emphasis added). We disagree. "[C]onjunctions are versatile words, which can work differently depending on context." *Pulsifer v. United States*, 601 U.S. 124, 151 (2024) (explaining that conjunctions used in statutes must be reviewed in context and not under grammatical rules). Although "and" is ordinarily construed conjunctively, other courts have recognized that "and" and "or" may be interchangeable where the statutory context, legislative purpose, or evidence of absurd results require such a construction. *See, e.g.*, *State v. Marx*, 215 P.3d 601, 610 (Kan. 2009) (discussing statute in which a conjunctive word may be construed as disjunctive). In the framework of a Chapter 49 proceeding, there are situations in which a respondent parent, custodian, guardian, or step-parent does not enjoy the full array of parental, custodial, and guardianship rights. The term "abusing parent," as used in West Virginia Code § 49-4-604(c)(6), is statutorily defined to include not only parents, with their full array of rights, but also guardians and other custodians, who have only partial rights. W. Va. Code § 49-1-201 (defining an "abusing parent" to mean "a parent, guardian, or other custodian").

"One way to think about this question involves the bundle of sticks metaphor we all learned in law school. Parents [and other adult respondents] possess a bundle of rights, or sticks, with respect to their children." *Kingston v. Kingston*, 532 P.3d 958, 976 n.91 (Utah 2022). Any one of those sticks in the proverbial bundle of rights, such as

13

custodial or guardianship rights, may be terminated upon the requisite findings set forth in West Virginia Code § 49-4-604(c)(6). If we were to adopt the petitioner's position, (c)(6) could not be used to terminate the rights held by respondents who only possessed "sticks" from the bundle of rights, rather than the complete bundle of parental rights.

This result would be absurd and would be contrary to the mandate that "the least restrictive alternative regarding parental rights to custody of a child under West Virginia Code § 49-4-604 (2020) will be employed[.]" Syl. Pt. 2, in part, *In re H.T.*, 250 W. Va. 11, 902 S.E.2d 143 (2024). Contrary to the petitioner's assertions, this Court has affirmed dispositional orders in numerous cases where the circuit court terminated a parent's custodial rights only. *See, e.g.*, *In re E.M.*, No. 25-138, 2025 WL 2781358 (W. Va. Sept. 30, 2025) (memorandum decision) (affirming termination of custodial rights only); *In re N.S.*, No. 23-279, 2024 WL 3761074 (W. Va. Aug. 12, 2024) (memorandum decision) (affirming termination of all parental rights to one child but only custodial rights to another); *In re H.C.*, No. 19-1172, 2020 WL 3447603, at *5 (W. Va. June 24, 2020) (memorandum decision) (concluding that the circuit court did not abuse its discretion in terminating petitioner mother's custodial rights rather than implementing a less-restrictive dispositional alternative"); *In re D.H.*, No. 19-0920, 2020 WL 5240419, at *4 (W. Va. Sept. 3, 2020) (memorandum decision) (finding no error in the circuit court's termination of petitioner father's custodial rights as there was sufficient evidence to find that there was no reasonable likelihood that he could correct the conditions of abuse and/or neglect in the

near future and that termination of his custodial rights was in the children's best interests); *In re P.A.*, No. 17-0704, 2018 WL 1040384 (W. Va. Feb. 23, 2018) (memorandum decision) (affirming termination of custodial rights only); *In re I.N.*, No. 16-0394, 2016 WL 6837982 (W. Va. Nov. 21, 2016) (memorandum decision) (affirming termination of custodial rights only); *In re C.M.*, No. 13-0134, 2013 WL 5476386 (W. Va. Oct. 1, 2013) (memorandum decision) (affirming termination of custodial rights only).

Finally, the interplay of West Virginia Code § 49-4-604(c)(6) with (c)(5) further illustrates why the "and" in subsection (c)(6) must be construed as "or." Disposition under West Virginia Code § 49-4-604(c)(6) must be available to terminate or restrict partial rights rather than all parental rights because we have previously acknowledged that (c)(5) *cannot be used* to terminate one parent's custodial rights when the child is placed with the other parent, but may only be used to create a true guardianship relationship with a third-party. *See In re H.B.*, 252 W. Va. 350, 922 S.E.2d 350, 362 n. 18 (2025) ("[A] disposition under § 49-4-604(c)(5) is not the same as termination of custodial rights, and it specifically does not encompass when a child is with a non-offending parent—only when a child is temporarily placed with a guardian or the DHS."); *see also In re R.G.*, No. 20-0509, 2021 WL 2366886, at *1 n.4 (W. Va. June 9, 2021) (memorandum decision) ("While the parties label the child's placement with his father at the conclusion of the mother's proceeding as a section 5 disposition, the child was not placed in a guardianship—a natural fit parent is not a guardian appointed by the court. Because the child was placed in the 'permanent sole

15

custody of the nonabusing parent,' it appears that the circuit court conducted the mother's disposition under § 49-4-604(c)(6) but did not terminate her parental rights."); *In re K. S.*, 246 W. Va. 517, 524 n.13, 874 S.E.2d 319, 326 n.13 (2022) ("[B]ecause the children were placed with their biological fathers, the parties appear to have been contemplating a simple termination of petitioner's *custodial* rights, rather than a guardianship or DHHR custody. Such a disposition would appear to be more appropriately governed by subsection 604(c)(6), rather than (c)(5).").

In light of the foregoing reasons, we hold that in making a dispositional decision under West Virginia Code § 49-4-604(c)(6), a circuit court has the discretion to terminate a respondent parent's custodial and/or guardianship rights, while leaving intact his or her parental rights. It is well-established that, "'[t]he controlling standard that governs any dispositional decision remains the best interests of the child.' Syllabus Point 4, in part, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014)." Syl. Pt. 4, *In re H.T.*, 250 W. Va. 11, 902 S.E.2d 143 (2024).

Based on the evidence, the circuit court concluded that it was not in the best interest of the children to be returned to the petitioner's custody at this time and it terminated her custodial and guardianship rights. This disposition recognizes our mandate that the circuit court determines whether the "conditions of the improvement period have been satisfied" as well as whether "sufficient improvement has been made in the context

16

of all the circumstances of the case to justify the return of the child." Syl. pt. 6, in part, *Carlita B.,* 185 W. Va. 613, 408 S.E.2d 365. Given the children's stated concerns regarding reunification with the petitioner, it was within the circuit court's discretion to find that their best interests were protected under this disposition restricting the mother's custodial rights, while allowing the petitioner to have the opportunity to petition for modification if circumstances change in the future.

## IV.

## CONCLUSION

For the reasons discussed above, we affirm the circuit court's December 6, 2024, dispositional order. We also affirm the circuit court's August 18, 2023, adjudicatory order, in part, but vacate it, in part, and remand this case for amendment of the adjudicatory order consistent with this decision. The Clerk is directed to issue the mandate contemporaneously herewith.

Affirmed, in part,
vacated in part, and remanded with instructions.

17